ST. LOUIS STAVE & LUMBER COMPANY *v.* SAWYER.

Opinion delivered May 17, 1909.

1.  MASTER AND SERVANT—DUTY TO WARN SERVANT.—Where a servant is young and inexperienced, it is at least a question for the jury to determine whether it was the duty of the master to instruct him in the performance of his duties and the dangers connected therewith, even though the danger would be obvious to an adult and experienced servant. (Page 481.)

2.  SAME—ASSUMED RISK.—Even if a master instructed a young and inexperienced servant how to do his work, it would be further necessary to show that he understood the danger connected therewith before it can be said that he assumed the risk of such danger. (Page 481.)

3.  SAME—LINE OF EMPLOYMENT.—An instruction to the effect that a master is not liable for injuries received by a servant employed to work at a certain machine, who voluntarily left his machine and assisted in mending a broken belt upon another machine, and while

so engaged received the injuries complained of, was properly modified to state that if the servant left his machine without the knowledge and consent of his foreman, and thereby went out·of the line of his duties, he could not recover. (Page 482.)

Appeal from Crawford Circuit Court; *Jeptha H. Evans,* Judge; affirmed.

### STATEMENT BY THE COURT.

On the 17th day of September, 1907, appellee was injured while working for appellant at its stave mill in Crawford County, Arkansas. At the time of his injury appellee had been working at the mill about two weeks. He was an illiterate young man, about nineteen years of age, and had never worked around machinery like that before. He was around another 'stave mill two or three weeks, but worked out in the woods. At the mill where he was injured, there was a line shaft about five feet from the ground fastened to the ceiling. There was no flooring to the shed, and the shavings were piled up so that they were six inches higher than the ground. The shaft was about two inches in diameter, and had about six pulleys on it over which the bands ran that moved the machines, planers, joiners, equalizers, etc. The shaft and machines were run by steam. The line shaft was rusty, and there was no box around it. The lace in a planer belt broke. The belt was made of rubber and cotton, and was about four inches wide. It had been in use a little over two weeks, and was greatly worn and frazzled. The ravelings were about as big as a finger, extended all over the belt, and were twisted together. The belt (single) was some twelve feet in length. It had been broken several times, and had broken a time or two on the day of the injury. It had been laced together with old bed ticking. When this belt to the planer broke, the superintendent was not present; but, when he came back, he directed that the belt be laced and put back on the planer. One of the employees called his attention to the fact that it was not fit for use, but he ordered it laced, and directed appellee to help lace it. Appellee worked under the directions of the superintendent, and it was his duty at that time to help lace the belt. The line shaft was revolving fast. All the other machinery, except the planer where this belt had broken, was running. When the super-

intendent ordered the belt to be laced, it was not then on the
line shaft, but an employee put it on the line shaft, and after he
had done so the foreman told appellee to help lace it.   While the
appellee was holding the belt for his fellow servant to lace, the
ravelings on the belt caught his right hand and caught the line
shaft, throwing him over and over the line shaft until it jerked
his right arm off at the elbow.   Appellee did not know what
effect the ravelings would have on the line shaft, did not know
that they were liable to catch on the line shaft and jerk him up
there.   Neither the superintendent nor any one else had told him
anything about the machinery.   He did not know there was any
danger in going around the line shaft at the time he was fixing
the belt.   The superintendent knew that, if the belt came off the
pulley and down on the line shaft, the ravelings were likely to
take hold of it.   He did not tell appellee that if they let the belt
get down on the line shaft the ravelings were likely to get caught
on it.   He knew the appellee was a very "green, ignorant boy
when he came to the mill to work."

On behalf of appellant there was testimony tending to show
that appellee had been instructed in the work of mending and
lacing belts, that he had been instructed to hold the belt while it
was being laced clear of the pulleys and the line shaft, and that
when it was so held there was no danger; that appellee was
already assisting to lace the belt when the superintendent re-
turned, and that the superintendent did not order him to assist in
lacing the belt.

Appellee sued appellant for damages resulting from his injury,
alleging negligence in the following particulars: "In allowing
and permitting the line shaft to revolve while the belt was being
laced; in not boxing the line shaft; in maintaining said line shaft
too low for safety; in permitting shavings, etc., to accumulate
under said line shaft; and in permitting the edges of said belt to
become worn and raveled.   The answer of defendant, appellant,
denied all the allegations of the complaint as to negligence, and
charged the truth to be that Claude Sawyer, appellee, was of
sufficient age and experience to know and appreciate the dan-
gers incident to his employment; that he had been fully in-
structed in regard to same by the defendant, and that, knowing
and appreciating the dangers incident to his employment, he as-

sumed the risk thereof. That said Sawyer was injured while engaged, on his own motion and outside of the line of his duty, in voluntarily performing the work of another employee; and that in so doing he assumed the risk incident to the doing of said work; and that the said Sawyer, while so engaged, was injured by reason of his own negligence and want of proper care and attention; and that said injury was in no wise brought about or superinduced by any fault, act or omission of the defendant.

Appellant objected to the giving of the following instructions:

"3. Among the non-assignable duties of the defendant to the plaintiff are the duty to use ordinary care to furnish him a reasonably safe place in which to perform the duties of his employment and reasonably safe means, instruments and appliances with which to perform his duties, and to use ordinary care to maintain them in that condition, and also, if plaintiff was young and inexperienced and for this reason did not know of or appreciate the danger of his immediate employment, if any, and defendant knew, or ought to have known, this in the exercise of ordinary care on its part, then it was defendant's duty to instruct him as to both latent and patent dangers, so that, as far as might be by proper care on his part, the plaintiff would be enabled to perform his duties in safety to himself. If defendant failed to properly discharge any of these duties to plaintiff, in so far as they are covered by the allegations of negligence in this case, and by reason of such neglect or failure of defendant plaintiff was injured while using due care himself, and in the line of his duties, and when he had not assumed the risk, then defendant is liable in this action. If defendant performed its duty to plaintiff as above indicated, or if plaintiff was himself wanting in ordinary care for his own safety, contributing to his injury, or if plaintiff has assumed the risk, in either case you should find for the defendant.

"No. 6. If defendant's foreman ordered plaintiff into a place of danger to aid in fixing the belt, and plaintiff by reason of youth and inexperience did not know of and appreciate the danger of the situation, and defendant knew this, or ought in the exercise of ordinary care on its part to have known it, then it was defendant's duty to warn him of his danger, so that, as

far as might be by proper care on his part, plaintiff could perform his duty in safety to himself. If the defendant failed in this respect, and plaintiff, while exercising due care for his own safety, by such failure suffered the injuries sued for, then plaintiff should recover in this action.

"12. If plaintiff was in the employment of the defendant, and his usual work was to run the equalizer, and at the time of the injury plaintiff was holding the belt of the planer for Boyd Smith to lace it, and defendant's superintendent was present, and knew that plaintiff was holding the belt, and acquiesced therein, then you may consider this in determining whether or not at the time of the injury plaintiff was engaged in the line of his duties in the service of the defendant in a place of danger outside the duties of his employment."

The court refused the following requests for instructions:

"2. If you find from the evidence that the plaintiff was engaged in lacing the planer belt, in connection with one Boyd Smith; that the line shaft was revolving at the time they were so lacing said belt; that the said belt was around the said line shaft and in actual contact therewith; that the said Claude Sawyer ((plaintiff) was aware the said belt was in actual contact with said line shaft at the time that he was assisting in lacing said belt; and, should you further find that the fact that the said belt was in actual contact with said line shaft was the proximate cause of the injury complained of by plaintiff, then the court instructs you that the plaintiff was guilty of such a degree of contributory negligence as prevents his recovering in this action; and you will find for the defendant.

"3. The court instructs you that if you find from the evidence that the plaintiff, Claude Sawyer, had been instructed by Chester C. Stephens, the foreman of the defendant, in the work of lacing or mending a broken belt, and cautioned in regard to the danger of such work; that the said Claude Sawyer, on the day of the injury and just prior thereto, had been ordered by said Stephens to assist one Boyd Smith in lacing the planer belt of the south planer, where the accident occurred; that the line shaft was revolving at the time they were so lacing the said belt; that the said belt was around the said line shaft and in actual contact therewith; that the said Claude Sawyer was

aware that said belt was in actual contact with said line shaft. at the time he was so assisting in lacing said belt; that the lacing of said belt while in actual contact with the said line shaft was contrary to the instructions so previously given by said Stephens to said Sawyer; and should you further find that the fact that the said belt was in actual contact with said line shaft was the proximate cause of the injuries complained of by plaintiff, then the court instructs you that the plaintiff was guilty of such a degree of contributory negligence as to prevent his recovering in this action, and you will find for the defendant.

"4. If you find from the evidence that the plaintiff was employed by the defendant to work at a machine called the equalizer, and you further find that the plaintiff, without any directions so to do from the foreman of the defendant, Chester C. Stephens (and without his knowledge and consent), voluntarily left his machine and assisted in the work of mending a broken belt upon another machine (and that in so doing he went out of the line of his duties), and that, while so engaged, the plaintiff received the injuries complained of, you will find for the defendant.

"5. Even though you may find that the plaintiff, Claude Sawyer, was requested to assist in the work of lacing or mending the planer belt, by the foreman, Stephens, yet, if he undertook to perform the service, he assumed all the risks ordinarily incident to such service, and can not recover in this case, unless you find from a clear preponderance of the testimony that the plaintiff, by reason of inexperience, did not understand and appreciate the danger incident to such employment."

The court modified request number four by adding thereto the words in parenthesis. The appellant excepted to the rulings of the court in refusing these requests, and in making the modification to request number four and in giving same as modified.

Among other instructions which the court gave were the following, to which there were no exceptions:

"(a)    If defendant is not guilty of want of ordinary care; that is, of negligence in any of the particulars assigned in this case; or, if guilty of such negligence, if such negligence did not cause the injury sued for, you should find for the defendant.

"(b)    If Claude Sawyer was of sufficient age and experi-

ence to know and appreciate the danger incident to his employment, and had been fully instructed in regard to the same by defendant, and knew and appreciated the danger incident to his employment, he assumed the risk himself, and can not recover.

"(c)   If Claude Sawyer was injured while engaged on his own motion outside of the line of his duty in voluntarily performing the work of another employee, he assumed the risk of injury, and can not recover.

"(d)   If Claude Sawyer was injured by reason of his own negligence and want of proper care and ordinary attention, he is guilty of contributory negligence and can not recover, no matter whether the defendant was negligent or not.

"The defendant company was not the insurer of the safety of the plaintiff, and the mere facts that plaintiff was in the employ of the defendant and was injured will not of themselves alone authorize a verdict against the company."

"If the belt was defective and dangerous in the particulars alleged, and known to be so by the defendant, and plaintiff was, in the course of his employment, holding the belt to be laced, and by reason of such defective and dangerous condition of the belt plaintiff was caught and injured at a time when he was exercising ordinary care for his own safety, and when he had not assumed the risk of the danger himself, then you should find for the plaintiff."

The above were given at the request of appellee.

The court also gave the following at the request of appellant:

"While a servant assumes the ordinary risk only of his employment, and the master assumes the duty of furnishing safe appliances, still if a servant, having sufficient intelligence to appreciate the dangers to which he is exposed, knowingly consents to occupy a place set apart to him, he assumes the risk incident thereto, and dispenses with the obligation of the master to furnish him with a better place; but, if, by reason of youth and inexperience, he is not acquainted with the dangers incident to the work or to the place he is engaged to occupy, he does not assume the risk of his employment, and the master will be held to indemnify him against the consequences of his failure to give him proper instructions."

"7.  It is a question for the jury to determine from all the

evidence whether or not plaintiff was young and inexperienced."

From a verdict and judgment in favor of appellee this appeal has been duly prosecuted.

*E. B. Wall,* for appellant.

While it is true as a general rule that if there be any evidence to sustain the verdict this court will not disturb it, yet if to sustain the verdict would require the court to believe something that in the very nature of things cannot be true, it will reverse for the insufficiency of the evidence. 79 Ark. 608. This court will not sustain a verdict based upon the assumption that appellee was injured by reason of "youth and inexperience," when the evidence shows that he lacked less than two months of being nineteen years old. It is well settled that when one enters the service of another he assumes the ordinary risks of the employment. 56 Ark. 232. Age, experience and degree of intelligence are not proper questions for the consideration of the jury until it is shown that the person injured was an inexperienced youth. 84 Ark. 74.

*Sam R. Chew,* for appellee.

It was the duty of appellant to instruct appellee of the specific dangers attending the specific business appellee was required to perform. Bailey, Master & Servant, pp. 11-112. If the master fails to so instruct, and the servant is injured because of such failure, the master is liable for the damages sustained. 58 Ark. 168; 71 Ark. 55; 53 Ark. 117; 73 Ark. 49; 56 Ark. 232. The verdict and judgment is responsive to the law and facts, and should be affirmed, notwithstanding there may have been some error in giving or refusing to give some instruction. 44 Ark. 556; 43 Ark. 296; 23 Ark. 115; 37 Ark. 238; 64 Ark. 238; 81 Ark. 247.

Wood, J., (after stating the facts). The rules of law to be applied here have been announced by this court in many, and in some very recent, cases. *Davis* v. *Railway,* 53 Ark. 117; *Emma Cotton Seed Oil Co.* v. *Hale,* 56 Ark. 232; *Ford* v. *Bodcaw Lumber Co.,* 73 Ark. 49; *King-Ryder Lumber Co.* v. *Cochran,* 71 Ark. 55; *Arkadelphia Lumber Co.* v. *Whitted,* 81 Ark. 246; *Western Coal & Mining Co.* v. *Burns,* 84 Ark. 74; *Arkansas Midland Ry. Co.* v. *Worden, ante* p. 407.

In the last case Worden was between 20 and 21 years of age. The Chief Justice, speaking for the court, said: "It is the duty of the master to give proper instructions and to warn the inexperienced servant of patent as well as latent dangers;" and, although in that case the proximate cause of the injury would have been an obvious danger to an adult or experienced person, the court, on account of Worden's inexperience, in the absence of instruction as to his duties and warning of danger, treated the question of whether Worden has assumed the risk as one of fact to be determined by the jury. Now, here it was a controverted question as to whether appellee had been instructed as to his duties and warned of the danger incident to the work in which he was engaged at the time of his injury. Although the danger of letting the belt in its dilapidated condition down on the fast revolving line shaft might have been an obvious one to an adult servant, and one that he would assume, without instruction and warning, on entering the service as one of the ordinary hazards incident thereto, yet to a gawky boy, ignorant, and with but limited or no experience in such work, it would, at least, be a question for the jury to say as to whether it was the duty of the master to instruct him in the performance of his duties and the dangers connected therewith. In the present case it was still a question for the jury to say, even if appellant had "instructed him in regard to the work of lacing and mending belts," as to whether he understood and appreciated the dangers connected therewith when the belt was allowed to rest on the revolving line shaft. For, while there is evidence that appellant told appellee and others to hold a belt while being laced "clear from the line shaft and the pulleys," there is no testimony that appellant instructed appellee of the specific danger in not so holding it. It can not be said as matter of law that a boy of the restricted knowledge and experience of appellee would understand and appreciate the danger unless specifically advised of it. In *Davis v. Railway,* 53 Ark. 117, Chief Justice COCKRILL said: "Knowledge of the fact that the rails were unblocked did not necessarily imply knowledge of the attendant danger. Knowledge of the danger was of itself a question of fact; and, if the jury believed that the deceased, by reason of his youth and inexperience, did not know of or appreciate the danger incident

to service about the unblocked rails, and that the company had exposed him to danger without warning him of it, they should have found that the risk was not one he had assumed by entering the service."

The charge of the court submitted the questions of negligence, contributory negligence, and assumed risk upon instructions that were exceptionally free from error. The charge as a whole evinced a clear comprehension of the law in such cases, as it has been declared by authorities generally and the numerous decisions of this court. The charge is set forth in the statement of facts, and it is unnecessary to discuss those instructions to which specific objection was made. To do so would be but a reiteration of former holdings.

Of the instructions refused, the second and third ignore the principle we have just discussed, that appellee must have understood and appreciated the danger before he could be held to have assumed the risk.

The modification to the fourth was in accord with the evidence, and was not complete without the addition. Under the evidence showing that the superintendent, who had full control over appellee, was present when the belt was being laced, the instruction, without the modification, would have been misleading, erroneous and prejudicial.

Viewing the evidence in the most favorable light for appellee, it amply sustains the verdict. The judgment is right. Affirm.