## HOLMES *v.* BLUFF CITY LUMBER COMPANY.

### Opinion delivered January 2, 1911.

1. EVIDENCE—OPINION OF WITNESS.—It was not error to refuse to permit a witness to testify whether the saw by which plaintiff was injured ought, in the exercise of ordinary care on defendant's part, to have been covered with a hood, as that was a question for the jury. Page 187.)

2. MASTER AND SERVANT—DUTY TO FURNISH SAFE PLACE.—It is the master's duty to exercise ordinary care to furnish his servant a safe place to work, and an instruction that it is the master's duty to furnish "a reasonably safe place to work" is erroneous. (Page 187.)

3. INSTRUCTIONS—CORRECTNESS OF REQUEST.—A party can not complain of the court's refusal to give an incorrect instruction. (Page 188.)

4.   MASTER AND SERVANT—DUTY AS TO SAFE PLACE.—Where the place
where plaintiff, a minor, worked was safe provided he did not come in
contact with the adjacent machinery, and it was not necessary for
him to do so in order to do his work properly, the only question of
negligence was whether the master had given him such warning of
the dangers surrounding him as would, in the judgment of men of
ordinary minds, be sufficient to enable him to appreciate the danger
from the machinery.   (Page 188.)

Appeal from Jefferson Circuit Court; *Antonio B. Grace,*
Judge; affirmed.

### STATEMENT BY THE COURT.

George Holmes, a boy about fifteen and a half years of
age, was at work for appellee at its saw and planing mill,
cleaning out sawdust from under a resaw.   The sawdust was
about a foot deep.   Holmes used a rake to clean up the dust
around the machine, but the dust underneath could not be
cleaned out with a rake.   A blow pipe was adjusted that came
down close to the floor for the purpose of drawing up the
dust.   When the blow pipe was stopped up with dust, to get
the dust out so that it would work one would have to put his
hand in to unchoke it.   The mouth of the pipe was not directly
under, but a little to one side of, the resaw.   From a point di-
rectly under the resaw to the pipe was somewhere from 12 to
16 inches.   Holmes had cleaned the pipe out once or twice be-
fore, and was not hurt.   The resaw was about 18 inches
from the floor.   Holmes was cleaning out the blow or suction
pipe with his hand.   When his hand was in the pipe, the resaw
was about eight or ten inches from his elbow, but Holmes
let his elbow come in contact with the resaw, and it almost
severed his arm.   At the time he was doing the work he was
directed to do the resaw had no hood over it.   If it had been
hooded, the accident would not have happened.   When Holmes
cleaned the pipe out before, he put his hand in the pipe in the
same manner.   He was not shown how to clean out the pipe;
"had seen the other fellows cleaning theirs out with their
hands."   He knew how to start and stop the machine, because
he had done so.   If the machine had been stopped, there was
nothing about the pipe to hurt Holmes, but he was not run-
ning the saw.   Any one who was running the resaw had the

right to start and stop it. Holmes had been working around the mill three days before he was injured, but had not cleaned out the blow pipes before that day.

There was no difference in the saw and the surroundings of the machine at the time he was injured and the time he had cleaned it out before. Holmes said "if he had been" careful to avoid coming in contact with the saw he supposed he could have cleaned out the pipe without coming in contact with the saw. He further said he "was not given any warning that day touching the dangers to which he would be exposed." The foreman told him "not to run into any of the saws or he would get cut," but he "was not warned about the particular place where he was cleaning out the sawdust." The foreman was sort of laughing and joking, and he says: "Don't run against any of the saws or you will get cut." Holmes further testified that he knew that before the foreman told him. He knew, if he put his hand on the saw or got against it in any way whatever, that he would get cut, but he did not know the saw was running, couldn't see it. Before he went there to clean out, he could see it, but not when he got down to clean it out. He knew exactly how near it was to the blow pipe. The foreman who employed Holmes testified in part as follows:

"At the time I hired him (Holmes) I do not think I spoke to him anything by the way of cautioning against the danger incident to his employment; but after he went to work I remember telling him once that any of those things around there would hurt him if he got into them, and that is about all the warning I ever gave any one. This I told him the first day he worked in the morning. I just told him if he got into them they would hurt him. I thought George was an extra bright boy, and would say that he was of such intelligence as to be able to appreciate what I told him. At the time he was hurt he was cleaning up around the resaw. The boy was under my direct supervision. I did not think the saw was in a dangerous condition. I consider any saw dangerous, as to that. I did not know the exact age of the boy, but thought he was about 17 or 18 years old. I know now his age to be 16½ years old. That is what his father told me. I never warned this boy with

reference to this particular resaw; not even when I saw him working underneath the saw prior to the accident."

Holmes, by his next friend, sued appellee to recover damages for his injury. He alleged negligence in not "furnishing him a reasonably safe place to perform his work," and in "not warning him of the danger to which he was then exposed."

Appellee denied all the material allegations, and set up in defense contributory negligence on the part of Holmes. The facts are substantially as set out above.

Holmes offered to show that the saw by which he was injured ought in the exercise of ordinary care on defendant's part to have been covered with a hood. The court refused to allow such testimony. Holmes asked the court to declare the law as follows:

"The court instructs the jury that if they believe from the evidence that defendant employed the plaintiff, George Holmes, a minor, and put him to work about dangerous machinery, then it was the duty of the defendant to furnish plaintiff a reasonably safe place to perform his work; and if among the duties of plaintiff it was to clean out for defendant sawdust and shavings from under a resaw which has no protection about it to prevent plaintiff from being cut or killed, then the jury may consider from the facts and circumstances in the case whether such place was a dangerous one.

"And if the jury believes from the evidence that plaintiff, George Holmes, was young and inexperienced as to such machinery, and did not know or appreciate the danger of his employment on account of his youth and inexperience, and that if defendant knew or ought to have known of such danger to plaintiff, if such be a fact, or might have known of such danger to him by the exercise of ordinary care on its part, then it was the duty of defendant to instruct the plaintiff as to the dangers surrounding him so that as far as might be by proper care, plaintiff would be enabled to perform his duty in safety to himself. If the defendant failed to properly discharge any of these duties to plaintiff in so far as they are covered by the allegations of negligence in this case, and if by reason of such neglect or failure of defendant plaintiff received the injuries of which he complains while using due care for himself, and in the

line of his duties, then defendant is liable to him in this action.

"And the court further tells you that defendant would be liable in this action to plaintiff if you believe from the evidence that plaintiff, while engaged at work for defendant, was not given a reasonably safe place in which to perform his work, but was exposed by reason of such place to being killed or to receiving great bodily injury, and that at the time he (the plaintiff) was too young and inexperienced to understand and appreciate the danger to which he was exposed, even though defendant had warned him of such danger or dangers attending the place where he was put to work. As to whether the plaintiff was able to understand and appreciate the danger to which he was exposed while working under and about the resaw which injured him, the jury will take into consideration the age of the plaintiff at the time of the injury, his intelligence and experience and knowledge of dangerous machinery at the time.

"2. The court tells the jury that it was the duty of defendant in employing the plaintiff, who was then and there a minor and inexperienced as to machinery, to warn him specifically as to the dangers surrounding him, if any, from being hurt or injured while engaged at work for it from any particular machinery where he was placed at work by defendant."

The court refused the request. The court gave correct instructions on assumed risk, the burden of proof, negligence and contributory negligence, and the measure of damages. It is unnecessary to set them out. Among others, the court gave the following:

"A3. When the servant by reason of his youth or inexperience is not aware of, or does not appreciate, the danger incident to the work he is employed to do, or the place he is engaged to occupy, he does not assume the risks of his employment until the master apprises him of the danger. It is the duty of the master to first give him such instruction and caution as would, in the judgment of men of ordinary minds, understanding and prudence, be sufficient to enable him to appreciate the danger and the necessity for the exercise of due caution in order to do the work safely with proper care on his own part. If, however, the danger was of such a character as to be obvious and apparent to any person of the age and intelligence of the

employee, having the use of his faculties, even without previous experience, then the risk of injury from such apparent danger would be one of the risks assumed by him, and the master would not be required to give him warning thereof.

"A7.    In this case the only negligence charged against the defendant is that he failed to give the plaintiff proper warning, information and instructions to enable him to appreciate and use due care to avoid the dangers to which he was exposed by virtue of his occupation.  If you find from the evidence that plaintiff by reason of his youth and inexperience was not aware of and did not appreciate the danger to which he was exposed, and that the master or his foreman did not use reasonable care and prudence in warning and instructing him in relation thereto, and the failure to give such warning and instruction was the proximate cause of plaintiff's injury, then you should find for the plaintiff, and assess his damages as hereinafter directed.

"1.    The mere fact that plaintiff Holmes was not of age at the time of the injury complained of is not sufficient to enable him to recover damages in this case, if he was able to appreciate the danger incident to his employment; so if you believe from the evidence that he was aware of the danger of coming in contact with the saw in evidence, that same was likely to injure him from such contact, that his employment was such as to necessitate carefulness on his part to avoid injury from such cause, then he assumed the risk when he entered such employment and cannot recover therefor.

"2.    If you find that plaintiff Holmes had been fully instructed in regard to the danger incident to his employment, and by reason of such warning, or if he otherwise knew and appreciated the danger incident thereto, then he assumed the risk himself and cannot recover.

"9.    If you find from the evidence that neither experience nor instructions were necessary in order to apprise the plaintiff Holmes of the danger liable to be encountered by him in the performance of his duties, and the injury was caused by the risk or danger incident to the employment, and not by the negligence of the defendant company, then plaintiff Holmes cannot recover by reason of the injuries suffered, and your verdict will be for the plaintiff."

In addition to the general exceptions to the court's instructions, the appellant reserved special exceptions as follows:

"That nowhere therein is the jury instructed or informed that it was the duty of the defendant to furnish plaintiff a reasonably safe place in which to perform his work or labor, and said instructions omit to inform the jury that it is a question for them to say, even if defendant had warned plaintiff of the dangers of his being injured by reason of working at, near or about the saw which caused his injury as to whether, considering his experience, youth and age, he understood and appreciated the danger to which he was exposed."

The verdict was for appellee. From a judgment entered in its favor this appeal has been duly prosecuted.

*Taylor & Jones,* for appellant.

This is a case of injury to an inexperienced boy of only 15½ years of age. It was the foreman's duty to instruct him not only with reference to the general dangers and risks incident to his employment, but also with reference to the particular place where he was set to work. "It cannot be said as a matter of law that a boy of the restricted knowledge of appellant can understand and appreciate danger unless specifically advised of it." 90 Ark. 473. See also 90 Ark. 407.

*W. F. Coleman* and *Danaher & Danaher,* for appellee.

Under no circumstances was appellee required to do more than to exercise ordinary care to provide a safe place in which to work. 92 Ark. 143; 36 Ark. 237. The instruction asked ignores the question whether the appellee knew, or ought to have known, that the appellant was young and inexperienced, and did not know and appreciate the danger. 91 Ark. 106; 84 Ark. 388; 56 Ark. 211; 58 Ark. 229; 76 Ark. 73. And for the further reason that it did not submit to the jury the question whether the work required of appellant called for any experience to enable him to do it with safety to himself. 58 Ark. 288. If the instructions given him were such as would, in the opinion of men of ordinary understanding and prudence, be sufficient to cause the injured party to understand and appreciate the dangers of his employment, and to exercise due care for his own safety, they were sufficient. 73 Ark. 55; 56 Ark. 238. As

to the second instruction requested, there could be no more specific instruction given than that which was given him not to touch any of the saws. Appellant knew the existence and location of this saw and the danger incident to working around it. The law does not require the master to perform the idle task of telling an employee of what he already knows. 74 Atl. (N. H.) 180; 39 Ark. 37.

WOOD, J., (after stating the facts). 1. The court did not err in refusing to allow witnesses to testify "that the saw by which plaintiff was injured ought, in the exercise of ordinary care on defendant's part, to have been covered with a hood." Witnesses could not give their conclusion as to what appellee should or should not have done with reference to providing a hood for the resaw. The failure to exercise ordinary care to provide a safe place for employees to work and safe machinery for them to work with would be negligence. It was for the jury, not the witnesses, to determine whether or not appellee was negligent. The statement of facts was for the witnesses, the conclusion to be drawn from the facts was for the jury. The court permitted testimony showing that the resaw was without a hood, and that the machine was supposed to be, but was not, covered with a hood.

2. The court did not err in refusing the prayers of appellant for instructions. The principles of law intended to be announced by these prayers were more correctly stated and were fully covered by the instructions of the court set out in the statement and numbered A3, A7 and 1 and 2. Prayer number 1 of appellant was defective because it told the jury that "it was the duty of the defendant to furnish plaintiff a reasonably safe place to work," and that if "plaintiff while engaged at work for defendant was not given a reasonably safe place in which to perform his work," etc., defendant would be liable. The instruction in this form exacted of appellee the duty of absolutely furnishing a reasonably safe place, when the law only required that appellee should exercise ordinary care to make the place safe. *Southwestern Tel. Co.* v. *Woughter,* 56 Ark. 206; *Emma Cotton Seed Oil Co.* v. *Hale,* 56 Ark. 237; *Arkansas Smokeless Coal Co.* v. *Pippins,* 92 Ark. 138; *St. Louis, I. M. & S. Ry. Co.* v. *Reed,* 92 Ark. 350.

The court did not err in refusing an incorrect instruction. *Smith* v. *Weatherford,* 92 Ark. 10. Parties must present correct prayers, else they cannot complain of the ruling of the court in refusing them. *Allison* v. *State,* 74 Ark. 444. See *Western Union Tel. Co.* v. *Ford,* 77 Ark. 531; *Horton* v. *Jackson,* 87 Ark. 530.

Furthermore, upon the undisputed evidence, the court was warranted in confining the issues of negligence to the question of whether or not appellee failed to give Holmes proper warning. The uncontroverted evidence shows that the place and the machinery were perfectly safe, provided the employees, in the performance of their duties, did not come in contact with the resaw, and it was not necessary for them to do so in order to properly do their work. Therefore the only question of negligence was whether or not appellee had given Holmes such warning of the dangers surrounding him and such instructions as to his work as would be sufficient, according to the judgment of men of ordinary minds, understanding and prudence, to enable him to appreciate the danger and the necessity for the exercise of ordinary care for his own safety in the performance of his duties. Learned counsel for appellant contend that in order for the court to have properly submitted this question it should have granted appellant's prayer number 2, as well as number 1. They rely upon *St. Louis Stave & Lumber Co.* v. *Sawyer,* 90 Ark. 473, and *Arkansas Midland Ry. Co.* v. *Worden,* 90 Ark. 407, as authority for their contention. But in these cases the evidence disclosed a failure upon the part of the employer to warn their inexperienced employees of the dangers incident to their employment.

While there were instructions in the case of *St. Louis Stave & Lbr. Co.* v. *Sawyer, supra,* as to how the work should be done and as to what the servant should not do, there was no warning as to the danger and consequent injury that would result if the instructions were not followed. But in the case at bar the servant was specifically warned of the danger as follows: "Don't run against any of the saws or you will get cut." The court in the instructions given correctly submitted the question of whether or not appellee was negligent in failing to give sufficient warning to young Holmes, and followed

the law as it has been often declared by this court in such cases. *Fones* v. *Phillips,* 39 Ark. 38; *Southwestern Telephone Co.* v. *Woughter,* 56 Ark. 211; *Davis* v. *Ry. Co.,* 53 Ark. 128; *Emma Cotton Seed Oil Co.* v. *Hale,* 56 Ark. 232, 238; *King-Ryder Lumber Co.* v. *Cochran,* 71 Ark. 56; *Ford* v. *Bodcaw Lbr. Co.,* 73 Ark. 55; *Arkadelphia Lbr. Co.* v. *Henderson,* 84 Ark. 382; *St. Louis Stave & Lbr. Co.* v. *Sawyer,* 90 Ark. 473; *Arkansas Midland Ry. Co.* v. *Worden,* 94 Ark. 407. See also *Worden Vehicle Co.* v. *Siggs,* 91 Ark. 106.

It was a question for the jury; and, as we find no error in any of the rulings of the trial court, the judgment is affirmed.