### ANTHONY *v.* SILLS.

### Opinion delivered February 16, 1914.

1. . PLEADING—VERIFICATION.—In an action in ejectment, when defend-
ants answered, denying plaintiff's title and setting up their claim,
upon plaintiff's motion, defendants should have been permitted to
verify their answer, by stating that they believed it to be true
(Kirby's Digest, § 6120), the defendant who had actual knowledge
of the facts being absent when the motion was made. (Page 473.)

2.  PLEADING—ANSWER—CONCLUSIONS OF LAW.—In an action in eject-
    ment by the widow and minor heirs claiming homestead, the an-
    swer of defendant is not demurrable, on the ground that it stated
    merely conclusions of law, where it set out abandonment, the ma-
    jority of the children, and prayed partition.   (Page 473.)
3.  APPEAL AND ERROR—APPARENT ERROR—MOTION FOR NEW TRIAL.—Where
    an error committed by the court is apparent from the face of the
    record, it is unnecessary to file a motion for a new trial.   (Page
    474.)

Appeal from Jackson Circuit Court; *R. E. Jeffery,*
Judge; reversed.

### STATEMENT BY THE COURT.

This was an action in ejectment and the complaint
contained the following allegations:

That the plaintiff, Theresa Sills, is the widow of Wil-
liam Simmons, deceased, and is not the owner of a home-
stead in her own right.

That plaintiff Lilly King is a daughter, and one of
the heirs at law, of William Simmons, deceased, and is
now nineteen years of age, and is entitled to a sixth in-
terest in the rents and profits of the homestead of the
said deceased William Simmons; and is the owner of an
undivided one-seventh interest in all the real estate
owned and possessed by the said William Simmons, at
the time of his death.

That the plaintiffs, Mandy and Ophelia Simmons,
are minors, and have no legal guardian; that each of
them is entitled to one-sixth interest in the rents of the
homestead of the said William Simmons, deceased, until
she shall reach her majority, and a one-seventh interest in
fee of all the lands of which the said William Simmons
died seized and possessed, and that all of said plaintiffs
are entitled to immediate possession of the homestead
of said William Simmons, who died intestate in Jackson
County, on the 4th day of January, 1897, seized and pos-
sessed of certain lands situated in said county, which
were described in the complaint.

The complaint alleged that the defendant, Wes An-
thony, was in the unlawful possession of said lands, and

had been since the 1st day of January, 1912. Plaintiffs prayed judgment for possession of the lands and for damages for the rental value thereof.

The defendant Anthony filed a motion to require plaintiffs to make their complaint more definite and certain, and set out the names of all the heirs of the said William Simmons, and the date of his death. In response to this motion the plaintiffs filed, as an exhibit to their complaint, the record of the proceedings of the probate court of that county, wherein it was recited that William Simmons died intestate July 25, 1896, leaving surviving him Theresa Simmons, his widow, Lilly Simmons, Mandy Simmons and Ophelia Simmons, his children, who were respectively of the ages of eight, seven and five years. This order of the probate court, which the plaintiffs made an exhibit to their complaint, recited that the lands described in the complaint had been set aside as a homestead to them as the widow and minor heirs of William Simmons, deceased.

Appellants, Gustave Jones, L. L. Campbell and W. N. Dunaway, on September 26, 1912, filed an answer in which they asked to be made parties defendant; but this answer was later withdrawn and a substituted answer filed. But before that answer was withdrawn, Wes Anthony, the original defendant, filed a separate answer adopting the answer of his codefendants, and, in addition, he denied that the plaintiffs had any title or right of possession in the lands sued for, and admitted that he was in the possession of the lands sued for, and had been since the 1st day of January, 1912, but alleged that he had been placed in possession by his codefendants, and that, as their tenant, he cultivated the lands, and in order to do so, he had been compelled to make various improvements consisting of houses built, and fences built and repaired at a cost to himself of $300, and he prayed judgment for that amount.

The defendant, Wes Anthony, also filed a motion in which he set up the fact that William Simmons left him surviving, six children whose names were stated, and

he prayed that those children who were living, and the heirs of those who were dead, be made parties, to the end that the rights of all parties might be adjudicated. The court overruled this motion.

Thereupon the appellants, Gustave Jones, L. L. Campbell and W. N. Dunaway, filed a substituted answer in which they alleged that W. N. Dunaway was the owner of an undivided one-seventh interest in the lands sued for under a deed to him from the plaintiff, Lilly King, a copy of which was made an exhibit to the answer; and it was further alleged that the said Lilly King was more than twenty-one years old, and that she had no interest in the lands in controversy, because of her said deed. The answer further alleged that long before the beginning of this suit, the plaintiff, Manda Simmons, having arrived at the age of twenty-one years, sold and conveyed her interest in the said lands to the said Gustave Jones and L. L. Campbell, by her deed which bears date of April 30, 1912, a copy of which was attached to their said answer. And it was further alleged that Ophelia Simmons was of full age and therefore had no homestead rights in the said lands.

The answer denied that the said lands were the homestead of the said William Simmons, at the time of his death, and admitted that the plaintiff, Theresa Sills, was the widow of the said William Simmons; but it denied that at the time of his death the land was her homestead; but defendants say that even though such was the case, she had subsequently abandoned this homestead. The answer further alleged that the said William Simmons at the time of his death left him surviving, nine children, the names of several of whom were unknown to these defendants. But defendants asked that the cause be continued until the next term of the court, by which time they would ascertain the names of the children living, and the names of the heirs of those who were dead, all of whom were asked to be made parties to this proceeding. And the court was asked to transfer the cause to the chancery court to the end that partition of the lands

might be had, after all parties in interest had been made parties to the litigation.

The plaintiffs demurred to the substituted answer, because the same did not state facts sufficient to constitute a defense, and on the same day there was also filed a motion to require the defendants to verify the answer, or, if they failed so to do, to strike same from the files.

The defendants filed a response to this motion to require the answer to be verified, in which it was stated that the facts recited as true in the answer were within the personal knowledge of only the defendant L. L. Campbell, who was absent from the court, with the leave of the court, and that therefore the answer could not be verified except on information and belief, until the return of the said Campbell. On the same day the court heard the motion to require the complaint to be verified, and sustained this motion, but did not dismiss the complaint. Thereafter on the same day the court sustained the demurrer to the answer and the record recites "and said defendants declining to plead further, and, standing on the demurrer, prayed an appeal to the Supreme Court, which is hereby granted."

The court thereupon, over the objection of the defendants, without the intervention of a jury, proceeded to hear the evidence, in regard to the rental value of the lands, and found that value to be the sum of $250, and rendered judgment for that amount, and also for the possession of the land in controversy.

This was done on the 5th of October, 1912, and appellants were given until the 2d of December in which to file a motion for a new trial. But on that day, instead of filing a motion for a new trial, they filed a motion to set aside the judgment, and petitioned to be allowed to verify the answer, as required by the court. This motion was overruled on the 3d of December, and the motion for a new trial was not filed until the 6th. No action was taken upon this motion until the 18th day of January, on which date it was overruled, "because it was not filed in apt time."

*Phillips, Hillhouse & Boyce,* for appellants.

The court erred in refusing to allow appellants to verify their answer. Kirby's Digest, § 6120; 42 Ark. 57; 94 Ark. 345, and in sustaining the demurrer to the answer.

Appellants should have been allowed a trial by a jury. Kirby's Digest, § 6170.

*Stuckey & Stuckey,* for appellees.

The motion for a new trial was not filed in apt time. Kirby's Digest, § 6218; 74 N. C. 383, 384; Words and Phrases, vol. 1, p. 487. The motion for new trial is essential to correct the errors growing out of the evidence or instructions before an appeal can be entertained by this court. 26 Ark. 536; 27 Ark. 549.

The court properly sustained the motion to strike the answer from the files. 44 Ark. 496, and the demurrer to the answer was properly sustained. 43 Ark. 296.

The court properly rendered judgment for possession and damages. 44 Ark. 496.

SMITH, J., (after stating the facts). We think appellants should have been allowed to verify their answer, by stating that they believed its recitals to be true. (Kirby's Digest, § 6120.) The court sustained the motion to require the answer to be verified; but it does not appear that the complaint was dismissed, because that order was not complied with. Upon the contrary, it appears that after making this order, a demurrer was heard and sustained. No useful purpose could have been subserved by verifying a demurrable answer. Appellees say the answer was demurrable, because it pleads only conclusions of law, and that there was nothing contained in its recitals, which would have defeated defendants' right to recover possession of the lands. It will be observed that the answer alleges that the plaintiffs, who sued as the children of William Simmons, are all over the age of twenty-one years, and under this allegation their homestead rights had terminated, and it was denied that the land sued for had ever been the homestead of the widow, and it was alleged that if it had ever been, that she had

abandoned her homestead, prior to the institution of this suit, and there were attached, as exhibits to the answer, copies of deeds from two of the plaintiffs to the appellants, Jones, Campbell and Dunaway. The answer was therefore not demurrable.

It is said, however, that appellants can not raise these questions, because the motion for a new trial was not filed in apt time, and that therefore there is no motion for a new trial. It may be conceded that there is no motion for a new trial, yet, that fact furnishes no ground for our refusal to review the action of the court, in sustaining the demurrer. The action of the court, in sustaining the demurrer and dismissing the complaint, was an error which is apparent from the face of the record, and in such cases no motion for a new trial is necessary. *Ford v. State,* 100 Ark. 517; *Independence County v. Tomlinson,* 95 Ark. 565; *Smith v. Hollis,* 46 Ark. 17; *Norman v. Fife,* 61 Ark. 33; *Ward v. Carlton,* 26 Ark. 662; *Hare v. Shaw,* 84 Ark. 32; *Steck v. Mahar,* 26 Ark. 536; *Union County v. Smith,* 34 Ark. 684; *Douglass v. Flynn,* 43 Ark. 398; *Badgett v. Jordan,* 32 Ark. 154.

The judgment of the court, sustaining the demurrer, and rendering the judgment against appellants is therefore reversed, and the cause will be remanded with directions to the court below to overrule the demurrer and hear the cause upon its merits.