WARD FURNITURE MANUFACTURING COMPANY v. PICKLE.

Opinion delivered June 20, 1927.

1. MASTER AND SERVANT—TEST OF SCOPE OF EMPLOYMENT.—A test as to whether an employee was acting within or without the scope of his employment or the line of his duty at the time when he was injured is to inquire whether the employer should have anticipated that he might attempt the act.

2. MASTER AND SERVANT—SCOPE OF EMPLOYMENT—JURY QUESTION.— In an action against an employer by an employee injured while unclogging a molding machine without stopping it, the question whether plaintiff was acting within the scope of his employment, held for the jury.

3. MASTER AND SERVANT—ASSUMED RISK.—A sixteen-year-old boy operating a molding machine held not to have assumed, as a matter of law, the risk of operating such machine when told to run it, where he had received no instructions with reference to feeding and operating the machine and was inexperienced in the use of it.

4. MASTER AND SERVANT—DUTY TO INSTRUCT INEXPERIENCED EMPLOYEE. —Where an employee is young and inexperienced, it is a question for the jury whether the master should have instructed him in the performance of his duty, and as to the dangers connected therewith, even though the danger would be obvious to an experienced servant.

5. MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE.—Where a master was a domestic corporation not engaged in interstate commerce, proof of contributory negligence on the part of the employee will not entitle the master to an instructed verdict under Crawford & Moses' Dig., § 7145.

6. DAMAGES—WHEN NOT EXCESSIVE.—In an action for personal injuries, where all the fingers except the index finger and thumb of an employee's left hand, as well as part of the palm down to the wrist, were amputated, causing pain and suffering, both at the time and afterwards, and humiliation throughout life from disfigurement, an award of $7,500 for injuries to a 16-year-old boy *held* not excessive.

7. TRIAL—SCOPE OF EMPLOYMENT—INSTRUCTION.—In an action by an employee for personal injuries sustained while operating a molding machine evidence *held* to justify the assumption in an instruction that plaintiff's position had been changed from that of off-bearer to feeder of the machine at the time of injury.

8. MASTER AND SERVANT—DUTY TO WARN SERVANT.—Where a 16-year-old boy employed as off-bearer of a molding machine, which position was not connected with its operation, was directed to run the machine, *held* that employer should instruct and warn him concerning additional attendant perils, if any, to the position of feeder.

9. TRIAL—INSTRUCTION AS TO WARNING SERVANT.—In an action for personal injuries to an employee while operating a molding machine, an instruction that, if employer's original instructions to plaintiff as off-bearer covered dangers incident to feeding the machine, then no further instructions were necessary when he became feeder, *held* not erroneous in assuming there were additional dangers necessarily requiring further instructions.

10. TRIAL—NECESSITY FOR REQUEST FOR FURTHER INSTRUCTIONS.—In an action by an employee for injuries sustained while operating a molding machine, where defendant believed that the omission of the defense of assumed risk from instruction was prejudicial, specific objection on that ground should have been made, especially where it requested and secured other instructions adequately covering such defense.

Appeal from Sebastian Circuit Court, Fort Smith District; *John E. Tatum*, Judge; affirmed.

*C. W. Knott,* for appellant.

*Warner, Hardin & Warner,* for appellee.

HUMPHREYS, J. This suit was brought by Ira Pickle, a minor sixteen years of age, through his father and next friend, against appellant, in the circuit court of the Fort

Smith District of Sebastian County, to recover damages in the sum of $20,000 for personal injuries received to his left hand while operating a molding machine in the furniture factory of appellant, through the alleged negligence of appellant in failing to warn him of the dangers incident to the operation thereof.

Appellant filed an answer, denying that it employed the boy, Ira, to operate a molding machine, but stated that it employed him as an off-bearer for molding machines, and interposed the defenses that he was not engaged in the line of his duty when injured, that he assumed the risk, and that the injury was due to his own negligence.

The cause was submitted to a jury upon the pleadings, testimony adduced by the respective parties, and instructions of the court, resulting in a verdict and consequent judgment for $7,500 in favor of appellee, from which is this appeal.

The following facts and disputed testimony are reflected by the record in so far as necessary to determine the questions involved on this appeal.

At the time of his employment appellee was sixteen years of age, a country boy, inexperienced in the use and operation of manufacturing machinery. He was first employed as an off-bearer for molding machines by the foreman, Frank Goebel, and placed under the control and supervision of the head molderman, C. F. Hoffman, who had charge. The foreman informed him of his duties as off-bearer, which consisted in taking timber off the table after it came out of the molding machine and placing it on a truck, which he assisted the molderman in moving to another machine when it was loaded. The foreman testified that he told him not to touch the molding machine while performing the duties of off-bearer, explaining if he did that he would get his hand cut off in the knife heads, which he showed him. On the third day of his employment he was directed by the molderman, C. F. Hoffman, to off-bear from two machines. He performed these duties for about two

weeks, or until Friday before he was injured on Saturday. On Thursday before the injury occurred C. F. Hoffman was succeeded by Joe Adkins, and, not knowing whether appellee had been off-bearing or feeding the machine, he directed him to run the molding machine. The machine he was directed to run had several knife headings. The last knife heading was 4 inches square and 10 inches high, carrying a blade on the front which operated beneath the table. There were four blades on the head, which cut three-fourths inch stock. The blades were four inches long, and were clamped to the head, which was propelled by a belt on the shaft making about 3,600 revolutions a minute. The machine would clog when a wedge-shaped piece of material was run through, and it was the molderman's duty to unclog the machine. The molderman used his discretion in stopping the machine to unclog it—he used his own judgment. Sometimes the molderman unclogged the machine while it was running, and at other times he stopped the machine to unclog it. A molding machine is stopped by using a shift handle fastened to the machine. The molderman had a feeder to each machine and an off-bearer to every two machines, who took their orders from him. Five molding machines were being operated on the floor under the direction of the molderman, and it was a common thing for the feeders, instead of the molderman, to remove the obstructions when the machines clogged up, either while the machines were running or after they stopped them. The method of removing the obstruction, either after the machines had been stopped or while they were running, was to unfasten some screws and to place a file on the wedge-shaped piece of material and drive it out with a hammer or wrench. It required instructions and experience in order to operate a molding machine. The only knowledge of the machine appellee had, prior to operating it, was in observing the other boys operate their respective machines during the two weeks of his employment as off-bearer. Appellee testified that, when Joe Adkins told him, about 3 o'clock Friday afternoon, to

operate the molding machine, he gave him no instructions, but simply said to him "to run the machine," and walked off; that he did not warn him of the dangers incident to operating the same, and did not tell him whether feeding the machine included the duty of unstopping it when it clogged up; that, after operating it a few minutes, the machine clogged, and the molderman unclogged it without stopping the same; that, in doing this, he unfastened some screws and used a file and hammer; that the machine ran all right the rest of the afternoon; that, Saturday morning, he was unable to start the machine, and the molderman started it for him, and, after running awhile, the machine clogged, and appellee proceeded to unclog it just as the molderman had done; that he could not start the machine after he had unclogged it, and asked the molderman to start it for him; that the molderman told him he did not have time to fool with the machine, whereupon appellee assisted other off-bearers and waited for the molderman to start it; that, after the molderman started the machine, he told appellee not to stop it any more; that the machine again clogged, and, thinking it his duty to unclog it, he proceeded to do so just as the molderman had done while running it, during which time the molderman passed by and observed his effort to unclog it, and did not tell him to quit or offer to unclog it for him; that the file slipped, and the weight of the file and the blow of the hammer carried his hand into the knife, which cut and mangled his hand so badly that all of the fingers, except the index finger and thumb, as well as a part of the palm of the hand down to the wrist, had to be amputated.

Joe Adkins testified that he complied with every request appellee made for him to unclog and start the machine; that he never directed appellee to unclog it, and never told him not to shut it down; that he never saw appellee trying to unclog it.

On account of the injury and amputation the use of his hand was impaired one-half and the usefulness of the arm to a large extent. A part of the grip of the

hand, and his ability to lift heavy articles, was lost. He returned to the farm after the injury, where he was able to do some work, but was unable to hoe and plow as he formerly had. Prior to the injury he had left the farm with the purpose of becoming a mechanic. At the time of the injury he was earning $1.53 per day, and was ambitious to advance and increase his earning capacity. He was in good health, of husky build and good weight. His expectancy was 44.9 years, and during that time he would have earned $21,433.33 if his earning capacity had not increased.

His pain and suffering after the injury and amputation of his fingers and part of the hand was intense for about three weeks, so intense that he was unable to sleep until about 3 or 4 o'clock in the mornings. At the time of the trial he still suffered from the injury, as if pins were sticking in his hand if he received a little jar or if there was any pressure upon it.

At the conclusion of the testimony appellant requested an instructed verdict, for the alleged reason that, according to the undisputed evidence, appellee was not engaged in the line of his duty at the time of the injury; that he assumed the risk, and that no warning was required; that the injury was the result of his own carelessness.

(1)   It is true that the record fails to show by positive testimony that it was the duty of appellee to unclog the machine as a part of his duty in running same, and that the molderman testified that it was their duty to perform this task, yet the record reflects testimony tending to show that, during the two weeks appellee was engaged in the duty of off-bearing, the feeders of the machines frequently unclogged them in the manner he was attempting to do at the time he received his injury. When told to run the machine, appellee's duties were not outlined to him. He had not been informed that it was the exclusive duty of the molderman to remove obstructions when the machine clogged. During the two weeks he had been employed as off-bearer, he had

observed other feeders of machines, as well as the molder-
men, removing obstructions when the machine clogged.
According to the testimony of appellee, just before he
received his injury he was observed by the molderman
in the act of unclogging the machine while in motion, and
was not told by the molderman to quit, but was allowed
to continue.

The test as to whether an employee was acting
within or without the scope of his employment when
injured, or within or without the line of his duty at the
time, is to inquire whether the employer should have
anticipated that he might attempt the act.   *Ambrozia* v.
*Austin* (N. H.), 124 Atl. 551.   We think, under this test,
the record presented an issue for determination by the
jury as to whether appellant should have anticipated that
appellee might attempt to remove the obstruction from
the machine while in motion if it should clog up.   The
issue was submitted to the jury under proper instruc-
tions, and was determined adversely to appellant.   Appel-
lant is bound by the finding, as the testimony relating to
the issue was conflicting.

(2)   It cannot be said as a matter of law, under
the undisputed facts in this case, that appellee assumed
the risk of operating the molding machine when told to
run it. It was a complicated machine, the operation of
which required knowledge, skill and experience.   The
danger involved in unclogging the machine was not open
and obvious, and there is nothing in the record to indicate
that appellee was aware of the situation and appreciated
the danger.   He had received no instructions with ref-
erence to feeding and operating the machine, and was
inexperienced in the use of it.   He was only sixteen years
of age, and such information as he had concerning the
machine and the operation thereof was obtained by
observation only while engaged in the performance of
his duties as off-bearer for the short period of two weeks.
The governing rule of law announced by this court is:
"Where a servant is young and inexperienced it is at
least a question for the jury to determine whether it was

the duty of the master to instruct him in the performance of his duty and dangers connected therewith, even though the danger would be obvious to an adult and experienced servant." *St. Louis Stave & Lumber Co.* v. *Sawyer,* 90 Ark. 473, 119 S. W. 830; *St. Louis-San Francisco Ry. Co.* v. *Conly,* 160 Ark. 592, 255 S. W. 308; *Brackett* v. *Queen,* 162 Ark. 525, 258 S. W. 635; *Mo. Pac. Rd. Co.* v. *Kinslow,* 168 Ark. 487, 270 S. W. 603; *Hogue* v. *Bundy,* 168 Ark. 879, 271 S. W. 979.

The issues of whether appellee assumed the risk and whether entitled to be warned of the dangers incident to the operation of the machine were submitted to the jury under proper instructions, and the adverse finding to appellant is supported by sufficient evidence.

(3) Appellant is a domestic corporation, not engaged in interstate commerce, so it was not entitled to an instructed verdict, even if appellee had negligently contributed to his injury. Contributory negligence was not a bar to the action. Section 7145, Crawford & Moses' Digest; *Athletic Mining & Smelting Co.* v. *Sharp,* 135 Ark. 330, 205 S. W. 695.

Appellant contends that the verdict should be reduced in a substantial amount because excessive. We think the injury received justified the amount awarded to appellee. His expectancy covered a long period of time, and he was a husky young lad, able and willing to work, and the way was open for increasing his earning capacity, with every opportunity before him to do so, at the time he was injured, which injury destroyed one-half his hand power and a large part of his arm power. In addition, he must endure humiliation throughout life from the disfigurement, and has endured much pain and suffering, and with more to endure whenever he receives a jar to or a pressure upon the arm.

Appellant's last contention for a reversal of the judgment is that the court submitted the issues joined upon erroneous instructions. We have examined the instructions assailed by appellant in his argument and brief and are unable to discover any inherent defects or preju-

dicial error in any of them. When all the instructions given are read together they fairly and comprehensively declare the law applicable to the respective theories of the parties, based upon the testimony adduced by each.

The instruction assailed most earnestly by appellant is as follows:

"You are instructed that, when the plaintiff was changed from the position of off-bearer to the position occupied and duties he was performing when injured, then he was entitled to instruction as to the duties he was then to perform, unless the original instructions, if any, covered them, and the risks and dangers, if any, incident thereto, even though you may find or believe from the evidence he had received instructions on the first day he was employed as an off-bearer, and, if you find from the evidence that the defendant failed to so instruct the plaintiff and to so warn him, then defendant was guilty of negligence in this case."

The main assault upon the instruction is that it assumes that appellee's position was changed from that of off-bearer to that of feeder. This assumption was warranted by the undisputed facts in the case. All of the witnesses testified that appellee was first employed as an off-bearer, which position was not in anywise connected with the operation of the machine, and that, when the new foreman was appointed, he directed him to run the machine. This necessarily required him to feed the machine. We think there is no dispute in the record at all that appellee was changed from the position of off-bearer to that of feeder. This change in position required that appellant instruct and warn appellee concerning additional attendant perils, if any. *Michigan-Arkansas Lumber Co.* v. *Bullington,* 106 Ark. 25, 152 S. W. 999.

Appellee further contends that the instruction assumes that there were additional dangers and perils which necessarily required further instructions. We do not so interpret the instruction. It simply told the jury that, if the original instructions given the plaintiff

covered the dangers incident to feeding the machine, then no further instructions were necessary.

Appellant also contends that the instruction is fatally defective because it ignores the defense of assumed risk. Appellant requested and secured other instructions which adequately covered this phase of the case. If appellant felt that any prejudice would result to it on account of the omission, it should have specifically objected to the instruction on that ground. *St. Louis, I. M. & S. R. Co.* v. *Blaylock,* 117 Ark. 504, 175 S. W. 1170, Ann. Cas. 1917A, 563; *Mo. Pac. Rd. Co.* v. *Barry,* 172 Ark. 729, 290 S. W. 942.

No error appearing, the judgment is affirmed.