BRANSCUMB v. WHITAKER.

4-9248                                   233 S. W. 2d 249

Opinion delivered October 23, 1950.

*Ted McCastlain,* for appellant.

*Sharp & Sharp,* for appellee.

GEORGE ROSE SMITH, J.    This action for personal injuries was brought by the appellant against his employer, the appellee.  The defendant did not have workmen's compensation insurance at the time of the injury, and the plaintiff elected to sue at common law rather than to file a claim under the compensation law.  Ark. Stats. 1947, § 81-1304.  This appeal is from a judgment entered upon a verdict for the defendant.

A pivotal issue at the trial was whether the plaintiff at the time of the accident had so far deviated from the scope of his employment as to have become a mere licensee instead of an employee.  Since we have concluded that the trial court gave an erroneous instruction upon this issue it is necessary for us to detail the facts only as they bear upon this question.

The appellee operates a stave mill, at which the plaintiff had been employed for about two months before he was hurt.  The evidence is in conflict as to the work for which the plaintiff was employed.  According to Branscumb's own testimony he was hired to haul and peel stave bolts outside the mill, but when that work was done he was required to go into the mill and work at the culling machine.  This machine, which uses a large knife

blade to cut the bolts into staves, is admittedly dangerous to anyone not skilled in its operation. The plaintiff testified that while he was working at this machine a fellow employee bumped his arm and knocked his hand into the machine, causing the loss of two fingers. It is conceded that the fellow servant doctrine is not available as a defense to an employer who fails to obtain compensation coverage. Ark. Stats., § 81-1304. The fellow servant in question testified that the injury was his fault. Other employees having the same duties as Branscumb testified that they too were required to work at the culling machine, either at the foreman's direction or with his knowledge.

At the trial the theory of the defense was that the plaintiff was employed to work outside the mill only. The foreman testified that only one employee was allowed to operate the culling machine, and when that man was absent the mill closed down. According to the foreman the plaintiff was neither directed nor permitted to enter the mill in the course of his work. Upon this theory the defendant requested, and the court gave, this instruction: "You are instructed that if you find from the evidence that the plaintiff was employed at the time of the injury to sort staves outside the mill proper and none of his duties required him to work at the operation of the machine at which he was injured, and you further find that he left the job that he was employed to do and without the knowledge or consent of the defendant or his foreman, but acting on his own volition and for his own purpose, undertook to operate the machine, and while doing so was injured, he would not be entitled to recover, and your verdict should be for the defendant."

The plaintiff objected to this charge on the ground that it required the employer to have known of or consented to the plaintiff's work at the culling machine on the particular day of the injury, in spite of the testimony offered by the plaintiff to the effect that it was customary for the plaintiff and other like employees to work at this machine when they were abreast of their other duties. This objection was well taken, for the jury would have been entirely justified in concluding from the lan-

guage of the instruction that the defendant would be liable only if he or his foreman was actually aware that the plaintiff was working at the culling machine at the time of the accident.

At common law it is certainly true that an employee cannot, except in an emergency, turn aside from his assigned tasks and undertake a different and unauthorized line of work without losing his status as an employee. A typical case of such a deviation from the scope of employment is *Taylor* v. *Grant Lbr. Co.,* 94 Ark. 566, 127 S. W. 962, where we held that by his actions the servant had become a licensee. But the rule is different when the unauthorized conduct has been so habitual that the jury may conclude that the employer is aware of the practice. *American Ry. Express Co.* v. *Davis,* 152 Ark. 258, 238 S. W. 50, and 1063. In a case much like this one on its facts, *Ward Furn. Mfg. Co.* v. *Pickle,* 174 Ark. 463, 295 S. W. 727, we held that the test is whether the employer should have anticipated that the employee might attempt the act that is later said to have been beyond the scope of his duties. In the case at bar if the jury had believed that the plaintiff and other similar employees habitually worked at the culling machine, their verdict might well have been for the plaintiff. Since the questioned instruction can fairly be said to have ruled out that line of thought it must be considered erroneous.

Reversed.

GRIFFIN SMITH, Chief Justice, dissenting. M. S. Whitaker owns Brinkley Stave Company, an unincorporated business, and directs its operations. The work program calls for three to twenty men, depending upon availability of raw material and the demand for staves.

Junius Branscumb, a 24-year-old Negro, lost two fingers August 18, 1948, when his right hand came into contact with the blade of a culling machine. Earl McFaul, colored, a fellow servant, admitted that he bumped a bolt against Branscumb while the latter was at the machine. Branscumb sought $4,500 to compensate the injury and has appealed from a judgment in favor of the defendant.

The action was brought under authority of Act 319 of 1939, with an allegation that injury resulted from the negligence of a fellow servant at a time when the plaintiff and all other workers were acting within the scope of their employment. Branscumb's pay was 55c per hour, amounting to an average of $26 per week.

The Compensation Act, Ark. Stat's, § 81-1304, permits one having a cause of action against an employer who has not *secured* the payment of compensation [insurance, ordinarily] to elect whether to proceed under the Act, or to sue in Circuit Court, but ". . . in such action it shall not be necessary to plead or prove freedom from contributory negligence, nor may the defendant employer plead as a defense that the injury was caused by the negligence of a fellow servant, nor that the employe assume the risk of his employment, nor that the injury was due to the contributory negligence of the employe."

Appellee's answer to the complaint was a general denial, coupled with the affirmative assertion that appellant was injured through his own negligence, "and at a time when he was not in the performance of a service for the defendant."

The effect of Branscumb's testimony was that his employment as a common laborer involved pulling stave bolts "out of a tunnel" and peeling bark from them. The bolts would then go to the culler for processing; but, said appellant, if he got caught up with this work, he would go to the culling machine. The regular operator was a man named Wallace.

Question: "After you got caught up [with the work you ordinarily did] where did you go?" A. "I went to culling." Q. "Who was culling before you began?" A. "Bill Wallace, the regular culler." Q. "Who else was at the machine before you got there?" A. "This old man McFaul." Q. "Did any of these men tell you to cull?" A. "No, sir, [but] they didn't try to keep me from it. I told them that Mr. Jack Crow sent me over there to cull. He had told me to cull on three or four occasions."

Crow testified that he was the mill foreman and had been since 1941. His general experience at mill work covered a period of 29 years. Culling, said Crow, required skill. Branscumb's duties were those of a common laborer, stacking and spreading staves outside of the building where machines were housed. An inexperienced man was never directed to operate the culler. If Wallace needed relief he (Crow) would take over, or the work would be temporarily suspended. Appellee Whitaker testified to the same facts. Other witnesses—some of whom were no longer employed at the mill—gave testimony tending to support the defense.

I think the controlling issue for submission to the jury was whether, when the injury occurred, Branscumb had, without authority, stepped aside to such an extent that a factual question relating to the misfortune at the particular time he claims to have been sent to do the work he was undertaking to perform was made for the jury: that is, Did the accident arise out of and in the course of the employment? It is conceded by appellee that if the plaintiff had a claim under Act 319 he was entitled to plead § 81-1304, Arkansas Statutes.

Although in his motion for a new trial appellant complains of the Court's refusal to give his requested instructions two and three, the record shows they were given. In fact, all instructions asked by appellant were given. General objections only were made to instructions given at appellee's request, with the exception of No. 2, where the objection was specific. The jury was told by this instruction that the plaintiff would not be entitled to recover if the evidence showed that at the time of injury he was employed to sort staves outside of the mill proper, "and that none of his duties required him to work at the operation of the machine, . . . [and that he] left the job he was employed to do, and without the knowledge or consent of the foreman, but acting on his own volition and for his own purposes, undertook to operate the machine."

This was a binding instruction, and if prejudicially erroneous in any essential the vice would not be cured

by a correct instruction. Appellant complains, and the Court's majority sustains this assignment, that he and others had testified to a custom that permitted unskilled men to operate the machine.

But appellant's case is founded upon his assertion that at the particular time in question the foreman, Jack Crow, "sent me over there to cull." If the plaintiff's purpose had been to show that he responded to custom or a permissive practice—in respect of which there was substantial testimony—he could have easily asked the Court to instruct on that phase, as distinguished from the very positive contention that on the day and hour of the injury he was expressly instructed to go to the culling machine. Since he elected to stand or fall upon this record, it should bind him. Branscumb concedes that he had not talked with Whitaker about culling. The plaintiff claimed that he was paid more for culling than for peeling the bolts, thus inferentially admitting that attendance at the machine was in a higher wage-scale bracket.

Appellant first contends that the judgment should be reversed because of prejudicial error on the face of the record, hence it was not necessary that objection to appellee's plea of contributory negligence be mentioned in the motion for a new trial. *Anthony* v. *Sills*, 111 Ark. 468, 164 S. W. 117. The answer is that appellant asserted that the injury occurred while he was "acting with due care of his own safety, and without negligence or fault on his part." It would be an anomalous situation if when the plaintiff had asserted he did not contribute to his own hurt, the defendant should be penalized for replying to the affirmative declaration, even though the reply may be treated as mere surplusage. Essential of the answer was appellee's assertion that Branscumb was not engaged in the performance of a service for the defendant.

It is next contended that we should reverse because of prejudicial error in permitting appellee to *prove* contributory negligence after objections had been interposed. Whitaker was asked, on direct examination, *where* a culler should stand with reference to the machine blades

—"Where should he stand to catch the staves?" A later question was, "If the culler doesn't deliberately stick his fingers in the machine [can he] get hurt?" Before an objection could be made the witness had answered no. There was no request that question and answer be stricken and that the jury be told the question was not proper. Section 5 of Act 319, Ark. Stat's, § 81-1305, denies recovery where the willful inattention of the employe causes injury. Under this section of the Act the defendant could undertake to show that the injury was self-inflicted.

By instruction No. 1, given at the plaintiff's request, all of the provisions of § 81-1304, (§ 4 of Act 319) were read to the jury, and in addition, the Court said, "Therefore it is not necessary that plaintiff plead or prove freedom from contributory negligence; nor may the defendant, Whitaker, plead as defense that the injury was caused by the negligence of a fellow servant, nor that the employe, Branscumb, assumed the risk of his employment, nor that the injury was due to the contributory negligence of the plaintiff."

The same instruction told the jury that if it should find from a preponderance of the evidence that the plaintiff was injured "in the course of his employment, . . . and if you should further find that he was injured as a proximate result of the carelessness and negligence of the fellow servant, Earl McFaul, as alleged in the complaint, while acting in the course of his employment, . . . then the defendant would be liable in this action for the reason that the negligence of the fellow servant, Earl McFaul, would be imputed to the defendant, and said defendant would be liable the same for the fellow servant's negligence as if the defendant had been guilty."

The defendant's theory of the case was expressed in his requested Instruction No. 1, given and generally excepted to:

"You are instructed that if you find from the testimony that the plaintiff was employed to push and pull tunnel cars and peel bark from bolts, and had nothing

to do with the operation of the machine at which he was injured, and you further find that his injuries were not the result of any risk to which he was exposed in the performance of his duties, then he would not be entitled to recover, and your verdict should be for the defendant.''

It will be observed that the plaintiff, after objecting to evidence relating to the attending circumstances of injury, asked the Court to instruct in respect of McFaul's activities—consonant with that part of his complaint alleging that the fault was not his.

In his brief appellant complains of the Court's action in not instructing the jury to disregard testimony relating to his contributory negligence. The subject was dealt with in appellant's requested Instruction No. 1 where he selected his own language to tell the fact-finders that Whitaker could not plead ''that the injury was due to the contributory negligence of the employe.''

The conclusion is inescapable that a disputed question of fact was presented: that is, Did the accident arise out of and in the course of Branscumb's employment? The jury, with the aid of all instructions requested by the plaintiff, and with those asked by the defendant that were given, (some were refused) concluded that Branscumb was not employed to operate the culler and that he was not asked by Whitaker or Crow, or anyone in authority, to make the attempt in circumstances shown by the testimony.

The phrase ''arising out of and in the course of'' is discussed in *Owens* v. *Southeast Arkansas Transportation Co.*, 216 Ark. 950, 228 S. W. 2d 646. We there approved the statement of Buckley, L. J., in *Fitzgerald* v. *W. G. Clark & Son*, (1928) 2 K. B. 796. ''In the course of,'' said Judge Buckley, means the place and circumstances in respect of which the accident took place, while ''out of'' points to the origin or cause of the misfortune.

In *Barrentine* v. *Dierks Lumber & Coal Co.*, 207 Ark. 527, 181 S. W. 2d 485, it was held that a compensable injury ''must not only arise in the course of employ-

ment, but also *out* of the employment—both elements must be present.'' The same principle was stated in *Lundell* v. *Walker*, 204 Ark. 871, 165 S. W. 2d 600: ''The injury . . . must occur while the employe is engaged in the master's business''; that is, liability attaches ''when the servant acts with reference to the services for which he is employed and for the purpose of performing the work of his employer, and not for an independent purpose of his own.''

The policy promulgated by Act 319, said Mr. Justice CARTER in *Birchett* v. *Tuf-Nut Garment Mfg. Co.,* 205 Ark. 483, 169 S. W. 2d 574, ''. . . is to compensate only for losses resulting from the risk to which the fact of engaging in the industry exposes the employe.''

Many cases from other jurisdictions might be cited in support of the proposition that if the employe is engaged to do a particular class of work as to which the risk is conclusively presumed to be known to the master, and neither the master nor any of those authorized to speak for him enlarges upon the scope of such employment, and the employe is not, in circumstances known to the management, or that ought to have been known by him, allowed to vary from the assigned task to an extent materially increasing the risk, — then, if the servant through curiosity, a misconception of his duty, or for any other cause in conflict with the master's intent, where the restriction is one of reason, undertakes to do something on his own account and is injured, liability will not attach.

A case in point is *Bullard* v. *Cullman Heading Co.,* 220 Ala. 143, 124 So. 200. In the Court's opinion Chief Justice ANDERSON said that the plaintiff was employed to offbear heading from a machine in the defendant's plant. Activities placed him at a point to which the heading was taken by a chain conveyor. It was the plaintiff's duty to hand the material to a fellow employe, to be stacked. The plaintiff, in order to rest, asked his foreman for permission to exchange work with a floorcleaner. After cleaning for a short period the plaintiff

left his job and began operating a bolting saw. This was without the knowledge of the foreman. The injury occurred within a few minutes of the time the unauthorized activity began. In discussing the issues on rehearing the Court said: "Here we have a case where the plaintiff was assigned a duty totally different from the one in which he was engaged when injured—one harmless, and the other to some extent dangerous, each independent of and disconnected from the other, and the master could not be liable in the absence of an express or implied consent to the discharge of the new duties. That there was such a departure, so as to remove the plaintiff from the protection of the Compensation Act, there can be no doubt."

In a case decided last year, *Georgejakakis* v. *Wheeling Steel Corp.*, 151 Ohio St. 458, 86 N. E. 2d 594, a Court-prepared syllabus says: "A person employed in and about an industrial plant, who departs from the sphere of his employment and is injured while deliberately and without authority or necessity engaging in a pursuit wholly foreign to the duties he was hired to perform, does not sustain an injury in the course of and arising out of his employment which is compensable under the Ohio Workmen's Compensation Act." Judge ZIMMERMAN, who wrote the opinion, said that a number of recent cases, factually similar to the Georgejakakis appeal, "hold that where an employe voluntarily and of his own motion exposes himself to risks patently outside of and beyond the course of his regular employment, and without the knowledge or acquiescence of his employer, such injury is not compensable."

Although Whitaker was an interested party (as was Branscumb) and his testimony will not be regarded as undisputed, and Cole was Whitaker's foreman, the jury had a right to find from the contradictory statements of the several witnesses that Branscumb was employed to work outside of the building and substantially away from it; that on August 18, 1948, he was not (as he so positively asserted) directed to engage in the transaction resulting in injury, and that his action in voluntarily substituting

for Hughes was not authorized by Cole. I think, too, that under the facts in this case, that part of Instruction No. 2 which told the jury that the plaintiff could not recover if, at the time, he was *"acting on his own volition and for his own purposes"* would have been sufficient—in the absence of an offered instruction by the plaintiff covering this point—to go to the jury on the issue of custom, even if it should be conceded that the plaintiff was entitled to try the case on two distinct theories—one involving express directions, and the other mill practices.

For these reasons I would affirm the judgment.