SOUTHWESTERN TELEPHONE CO. *v.* WOUGHTER.

Opinion delivered May 16, 1892.

1. *Master and servant—Risks of employment.*

   When a servant enters into the service of another, he assumes all the ordinary and usual risks and hazards incident to his employment; an instruction that he assumes such risks only as are *necessarily* incident to such employment is erroneous.

2. *Injury to servant—Latent defect—Liability of master.*

   A telephone company undertook, by its manager, to personally supervise the removal of a telephone pole, which appeared to be sound, though the inside was decayed, and ordered a servant to climb the pole and detach the wires. As he did so, the pole broke and threw him to the ground, seriously injuring him. In a suit by the servant to recover damages, *held*, that, in the absence of contributory negligence on part of the servant, the company's liability depended upon its failure to use the means a prudent man would have employed to protect the servant from harm.

Appeal from Jefferson Circuit Court.

JOHN M. ELLIOTT, Judge.

*J. W. Crawford* and *S. M. Taylor* for appellant.

1. An employee assumes all the risks *ordinarily* incident to his employment, and not those only which are *necessarily* incident to the employment. The second instruction was error. Bish. Non-Cont. Law, sec. 675 and cases; 135 Mass. 418; 113 *id.* 396; 54 Ark. 389; 46 *id.* 388. Upon the undisputed facts of this case, the risk was one which the law cast upon the plaintiff. He was of full age and experienced, and knew the nature of the risk. 26 L. J. (N. S.) Ex. 221; 61 Ill. 130; 50 Wis. 462; 129 Mass. 268.

2. If the company used proper care in its employment of its foreman, it is not responsible for any negligence of which he may have been guilty in directing plaintiff to ascend the pole. If negligent, it was the negligence of a fellow servant. 135 Mass. 209; 96 Pa. St. 246; 32 Minn. 54.

3. The fourth instruction is objectionable because there was no evidence to show that the master personally assumed the direction of the work. Dunbar was not the master. 11 Ore. 257.

*M. A. Austin* for appellee.

1. The defect in the pole was latent, and while in such case the employer is not liable for an injury through a latent defect whose existence he did not expect, still if the employer should have known of the defect and failed to learn of it through negligence, he is liable. 44 Cal. 187; 17 Wall. (U. S.), 553; 78 Ala. 494; 30 Mo. 115; 83 N. Y. 7; 4 Oh. St. 566; 33 Am. & Eng. R. Cas. 549; 14 A. & E. Enc. Law, p. 891.

2. A master is required to exercise due care in supplying and maintaining suitable instrumentalities for the performance of the work, and is liable for negligence in

not doing it.   44 Ark. 524; 17 Wall. 657; 28 A. & E. R. Cas. 514; 110 Mass. 260.

3.   The instructions embodied the law, and there was evidence to sustain the verdict.

*W. S. McCain* for appellant in reply.

1.   The complaint is bad.

2.   When an adult servant does an act known to be dangerous, he cannot hold the master liable for having directed him to do it, if injury results from performing the act.   Patterson, Ry. Ac. Law, sec. 334; 139 Mass. 580; 28 A. & E. R. Cases, 308; 11 *id.* 201; 150 Mass. 423.

3.   Appellee is barred by his own contributory negligence.   51 Ark. 467; 46 *id.* 388; 9 S. E. Rep. 1082.

BATTLE, J.   This was an action by appellee against appellant for personal injuries received by appellee while in the employment of the defendant.   At the trial in the circuit court there was evidence adduced tending to prove the following facts :

Appellant was a corporation engaged in operating a telephone line in the City of Pine Bluff in this State. Appellee was twenty-six years of age, and was an experienced lineman.   Many of the poles in the line of the appellant were of cypress timber and decayed.   E. M. Dunbar, the manager of appellant, employed the appellee to remove the decayed poles.   At this time appellee had been in Pine Bluff a short time, was not familiar with cypress timber, and knew not how long the poles had been in the ground.   There was nothing connected with some of them, so far as could be seen, that proved them unsafe to climb, they appearing to be sound.   Their soundness or unsoundness could only be ascertained by boring or cutting into them, as the outside appeared sound while the inside was decayed.

Appellee commenced work for appellant on the 24th of October, 1889, and continued until the 26th of November following.   On the 26th of November, Dunbar, who

was then appellant's manager, ordered him to go up a certain pole and loosen the wires attached to the same as quick as he could.   The pole was thirty-seven feet high. Appellee had dug around it with a spade several days before and decided that it was all right.   He had previously climbed it several times, and was satisfied it was safe.   Dunbar had no more reason to believe it was unsafe than he, except that Dunbar knew the age of the pole and appellee did not.   At the time Dunbar ordered him to ascend, Dunbar said something about the safety of it, and both of them examined it, and it appeared to be safe.   He (appellee) shook it, satisfied himself that it was safe, and then ascended it and loosened the wires as he was ordered to do, and as he did so the pole broke and fell, and threw him to the ground, seriously injuring him.   The cutting of the wire caused it to break and fall.   If it had been guyed, it would not have fallen, but it was not.

Dunbar was not usually with the workmen, when engaged in removing the poles, to decide which were defective, and when he was absent they did so without him.   Appellee was in the habit of relying on his own judgment about the safety of climbing the poles.

Upon this evidence the plaintiff requested, and the court gave to the jury, the following instructions, among others, over the objections of the defendant:   " A person engaged in any hazardous employment only assumes such risks as are necessarily incident to such employment, and has the right to presume that his employer will exercise proper care in the conduct of the work, so as to protect him from all danger, except such as is actually and necessarily incident to the employment.

" If the jury believe from the evidence that the superintendent or foreman ordered him to go up the pole, and the plaintiff obeyed the order of the superintendent or foreman in ascending the pole and removing the wires

therefrom, and that the danger of ascending and performing this work was not so apparent that a prudent man would refuse to take it under the orders of his superintendent or foreman, and that while he was thus engaged the accident occurred without any act of negligence on the part of the plaintiff, and occasioned the injury, they will find for the plaintiff.

"The court instructs the jury that where a master personally assumes the direction of work which is being performed by his servant, and in consequence of following the directions of the master the servant is injured, the former is liable when the danger incurred was not fully known to the servant, was not obvious to him from his knowledge, and he had reasonable cause to believe that he could follow the directions in safety, and was in the exercise of due care."

The jury returned a verdict for the plaintiff; and the defendant appealed.

Did the court err in instructing the jury?

1. What risks a servant assumes.

When a servant enters into the service of another, he assumes all the ordinary and usual risks and hazards incident to his employment. He is presumed to have these risks in contemplation, and to contract in reference thereto when he enters into the employ of the master; and consequently can not recover for injuries resulting to him therefrom. *St. L., I. M. & S. Ry.* v. *Gaines,* 46 Ark. 555; *L. R., M. R. & T. Ry. Co.* v. *Leverett,* 48 Ark. 333, 346; Wood's Master and Servant (2nd ed.), sec. 349.

It is the duty of the master to use reasonable care, diligence and caution in providing for the safety of his servant, and in furnishing for their use in his work safe and suitable instrumentalities and appliances in the prosecution thereof and in keeping the same in repair. While he does not insure the safety of his servants, yet he is bound to take heed that he does not, through his

own want of care and prudence, expose them to unreasonable risks 'or dangers, either from the character of the tools with which he supplies them, or the place in which he requires them to operate.   He is in duty bound not to expose them to danger of which he knows, or has reason to know, they are not aware.   Before ordering them to perform any service, he should warn them fully of the latent dangers incident thereto, if there be any, of which he knows, or, in the exercise of proper diligence, ought to know ; and this duty " extends even to patent dangers when he knows the servant, by reason either of his youth or his inexperience, is not aware of the danger to which he is exposed ; or   *   *   *   which are unknown to the servant from any cause, and which would not readily be ascertained  except by a person  possessed of peculiar knowledge, which he has no reason to suppose the servant possesses."   *Smith* v. *Peninsular Car Works*, 60 Mich. 501; *Walsh* v. *Peet Valve Co.*, 110 Mass. 23; *Tissue* v. *Baltimore & Ohio R. Co.*, 112 Penn. St. 91, 98 ; *Benzing* v. *Steinway & Sons*, 101 N. Y. 552 ; *Railway* v. *Rice*, 51 Ark. 478 ; Wood's Master and Servant (2nd ed.), sec. 352.

Among the duties of the servant is the obligation to obey all reasonable commands of the master.   In obeying the commands of the master, if he has no information or knowledge to the contrary, he has a right to presume that the master has done and will do his duty toward him, and can rely upon the judgment and discretion of the master in its performance.   When he is ordered by the master to perform certain services, or to perform them in a certain place, and the risk or danger of obedience is not obvious or apparent to him, he can ordinarily act upon such presumption and reliance, and obey such orders, without being chargeable with contributory negligence or with the assumption of the risk of so doing. He need not stop to ascertain the dangers and risks inci-

dent to obedience, when they are not already patent or known to him, but may, in confidence that the master has done and will do his duty to him, act at once in obedience to the master. In that case the order is an implied assurance to him that there is no danger in obeying it, and he can act accordingly without subjecting himself to the imputation of negligence. If in so doing he is injured, he can recover damages from the master, unless the master be guilty of no negligence. If, however, the danger or risk of injury from obedience is so great and so obvious and apparent to him as to render it, under the circumstances, unreasonable and imprudent for him to obey, but he voluntarily obeys and is injured, he would be guilty of contributory negligence and without remedy against his master. In that case it was not his duty to obey. *Cook* v. *St. Paul, Minneapolis & Manitoba Ry. Co.* 34 Minn. 45; *Lorentz* v. *Robinson*, 61 Md. 64; *Connolly* v. *Poillon*, 41 Barb. 366; *Haley* v. *Case*, 142 Mass. 316; *Miller* v. *Union Pacific Ry.* 12 Fed. Rep. 600; *Roberts* v. *Smith*, 2 H. & N. 213; *Keegan* v. *Kavanaugh*, 62 Mo. 230; *Noyes* v. *Smith*, 28 Vt. 59; *L. R., M. R. & T. Ry. Co.* v. *Leverett*, 48 Ark. 347; *Leary* v. *Boston & Albany R. Co.* 139 Mass. 580; *Lothrop* v. *Fitchburg Railroad*, 150 Mass. 423; *McDermott* v. *Hannibal & St. Joseph R. Co.* 87 Mo. 285; S. C. 28 Am. & Eng. Railroad Cases, 528; Cooley on Torts (2d ed.), pp. 655, 656; 2 Thompson on Negligence, pp. 974, 975.

2. Liability of master for injury to servant.    In this case the appellant was constructively present by and through its manager, and must be held accordingly. Assuming, but not deciding, that the facts are as above stated, appellant undertook to personally supervise the removal of a defective and unsafe telephone pole, and ordered the appellee to climb it and detach the wires therefrom. Before doing so it was its duty to appellee to exercise ordinary care and prudence in ascertaining the latent defects in the pole, and inform him of the

defects thereby discovered and the probable risk of ascending the pole. If appellee already had such information, there was no duty to give it. The true question was, not whether appellant could have discovered the defects and risks before appellee obeyed its order, but whether it used those means a prudent or careful man would or ought to have employed to find them out and failed to make known to appellee, before he obeyed its order, the defects discovered, if any, and the probable risk of ascending the pole on account of the same. If it failed to do so, it was responsible to appellee for the damages he sustained by his fall, unless he (appellee) was guilty of contributory negligence.

The circuit court erred in instructing the jury.

Reversed and remanded for a new trial.