FRASER *v.* NORMAN.

Opinion delivered October 19, 1931.

*Buzbee, Pugh & Harrison,* for appellant.
*Evans & Evans,* for appellee.

MEHAFFY, J. The appellee brought suit against the appellant to recover damages for injury received while in the employ of the appellant. He alleged that he was working under Judson Jeffus, general foreman, doing whatever Jeffus directed him to do; that Jeffus directed him to assist one George Baumis about some carpenter work and to follow Baumis' instructions in performing his work; that he was ordered by said Baumis to go upon a scaffold and nail some headers which he had been cutting for Baumis; that the scaffold had been negligently constructed by defendant's agent too close to the wall, so that while working overhead, nailing headers, the plaintiff was overbalanced, so that when he struck a nail in his awkward position the scaffold slipped, causing him to strike the nail a glancing lick, which caused the nail to ricochet out. The nail struck plaintiff in the eye, causing him to lose his eye. He prayed for damages in the sum of $5,000.

The answer of appellant denied all the material allegations of the complaint, and alleged that whatever damages he sustained were the result of his own negligence or of a risk assumed by him.

The appellee testified that he was 50 years old, a laborer, not a carpenter but a carpenter helper; that he was employed by the appellant and began work on the first day of July, and worked until the third of September, when he received his injury. Appellant, who was a contractor, was building a school house. He had worked for appellant before, beginning in 1927 and working off and on until he was injured. He was hired as a carpenter helper, or anything that was to be done on the job.

The morning before the injury, the foreman wanted some extra laborers, and appellee helped him to pick some, as he lived there, and the foreman then told him to go and help George Baumis, a carpenter. He asked Baumis what he wanted him to do, and Baumis told him to cut some headers and bring them up and lay them on the scaffold. Baumis then told appellee to get on the scaffold and nail some of the headers. Appellee asked,

"How is the scaffold?" and Baumis said, "It's all right, I've been on it."

Appellee got on the scaffold, and Baumis told him to go ahead and nail some of the headers, and he did. There was a 1 x 8 nailed to studding on the partition wall and a leg of the same kind of material, and another 1 x 8 nailed from the studding of the partition wall over to the window frame, and a 2 x 10 lying across these, and this constituted the scaffold.

The scaffold was about 4½ or 5 feet high and extended out from the partition wall about 3 feet. The arm was about three feet long, and the header extended out from the partition wall and the scaffold was very close to the wall, and, when he went to nail the headers he had to lean back, and when he leaned back his feet were on this 2 x 10 which was loose, and when he made the lick in the header the 2 x 10 he was standing on slipped and went back, which caused him to hit the nail a glancing lick, and it flew out of the timber and hit him in the eye. He did not fall but caught on to the overhead joist.

Baumis was doing the same thing, only he was above appellee. He had not nailed any of these headers before he was hurt; thinks that was the first one. When the nail hit him, he got pretty sick, told Mr. Fraser about it, and Fraser said he had better go to the doctor. He went to Dr. Hedrick, who told him his eye was out. Fraser came down, and Dr. Hedrick told him to take appellee to a specialist. He was taken to Dr. Moulton, a specialist, to treat him, who finally removed the eye-ball.

Appellee then told about his injury and suffering, but it is not necessary to set this testimony out because there is no dispute about the extent of his injury.

On cross-examination appellee testified that he had done carpenter work for a number of years and had worked on platforms before; that the ceiling was to be put on these headers. The particular work he was doing at the time was nailing these headers for the ceiling to be placed on. He had his own tools, a hammer and saw and

square. His hammer was in good condition, and the nails were ordinary six-penny nails.

At the time of his injury he was standing on the 2 x 10. He did not put it there, Mr. Baumis put it up that morning. The 2 x 10 was just laid on the cross-bars. They very seldom nail them down. The arm was nailed to a stud, and this 2 x 10 was just lying up there. It was about 12 feet long. This 2 x 10 plank was about 12 feet long and was lying across these arms, and could be moved when he got ready. He could move it around to other positions as he saw fit, according to how he wanted to stand. That was the plank he was standing on when he drove the nail and became overbalanced. He felt the plank move toward the wall. It was not against the wall. He could have put it where he wanted it. He thought it was at a convenient place until he went to drive the nail.

The platform extended 10 or 12 feet, and he could step about on it any place to drive the nail. When he reached back, the board went toward the wall. The arms and legs were there when he went there. The plank he was standing on was laid up solid on the arms.

Dr. Moulton testified as to appellee's injury, and Dr. Hedrick also testified as to the extent of the injury. The appellee was then recalled, and on cross-examination testified that he had been on this sort of platform many times before.

The jury returned a verdict for $2,500. Motion for new trial was filed and overruled, and the case is here on appeal.

It is contended by the appellant that there is no evidence to support the verdict, and that its request for a peremptory instruction should have been granted.

The only negligence alleged by appellee is that the scaffold, that is the 2 x 10 on which appellee was standing, was negligently constructed by defendant's agent too close to the wall, so that plaintiff, while working, was overbalanced when he struck said nail; that the scaffold slipped, causing him to strike the nail a glancing lick.

Baumis, who put the scaffold up, was a fellow-servant and was joined as a defendant in the suit. The court, however, instructed a verdict in favor of Baumis. There is no dispute about the facts.

According to appellee's own testimony, he had been on similar platforms many times and knew all about the arrangement, knew that they were not generally nailed, knew where the 2 x 10 on which he must stand was placed, and knew also that he had a right to place it wherever he thought proper.

It does not appear from the evidence that the master had anything to do with the scaffold except to furnish the material out of which it was made, and it is generally held that the obligation of an employer to furnish his employees with safe appliances and a safe place to work does not impose upon him the duty of supplying instrumentalities in a completed form.

Where the employees construct the scaffold, the employer's duty is discharged by furnishing suitable materials, and the employer is not liable for injury due to a defect in the construction or adjustment of the scaffold.

In this case the undisputed evidence shows that the appellee himself had a right, and it was his duty, to adjust it to suit his own convenience.

The general rule may be stated as follows: Where the employer does not undertake to furnish the scaffold, but instead merely supplies material for its construction, and where the employer has no supervision over the erection of the structure and gives no directions in regard to it other than to direct that it be constructed, he is not liable for an injury due to negligence in its construction. 18 R. C. L., 596-597.

If, however, the employer furnishes the scaffold, or, if it is constructed either by himself or under his direction, he must exercise ordinary care to furnish the employees with a safe place to work, and it is wholly immaterial whether the master undertakes to perform this duty himself or delegates it to another.

The undisputed evidence in this case, however, shows that the employees themselves constructed the scaffold, and there is no evidence that the master had anything to do with it.

A servant, in accepting and continuing in the employment, assumes all the ordinary and usual hazards incident thereto, and also all the risks which he knows to exist. *Graham* v. *Thrall*, 95 Ark. 560, 129 S. W. 532; *Choctaw, O. & G. Rd. Co.* v. *Thompson*, 82 Ark. 11, 100 S. W. 83; *Sw. Tel. Co.* v. *Woughter*, 56 Ark. 206, 19 S. W. 575; *Fordyce* v. *Stafford*, 57 Ark. 503, 22 S. W. 161; 3rd Labatt's Master & Servant, § 1168.

There is no contention in this case that there was any defect in the materials furnished or that the scaffold was improperly constructed, except it is claimed that the plank was too close to the wall. This is the only ground of negligence alleged.

The appellee, however, testifies that he had used scaffolds like this before; that he had a right to place a plank wherever he wished, and there was certainly nothing about the situation that was not open and obvious. The employee assumed whatever risk and hazard there was because of the plank's being too close to the wall.

The appellee cites and relies on the following cases: *Moline Timber Co.* v. *McClure*, 166 Ark. 364, 266 S. W. 301, but in that case the court said: "There is a sharp conflict in the testimony whether or not plaintiff was working under the immediate direction and supervision of the foreman, or whether he was merely working in conjunction with a fellow-servant."

In the instant case there is no conflict in the testimony, and no claim that appellee was working under immediate direction and supervision of the foreman. He testifies that the foreman told him to go up and help Baumis, but there is no evidence that the foreman gave him any directions other than to go up and help Baumis.

The next case relied on by appellee is *Brackett* v. *Queen*, 162 Ark. 525, 258 S. W. 635. The court said in that case: "The rule is well settled in this State that

when it appears to be clear that the servant has knowledge of and appreciates the danger incident to his work, or that the danger is so obvious or apparent that knowledge and appreciation thereof should be imputed to him, then the court should declare as matter of law that the servant is not entitled to recover.''

The court further said in that case: ''He was required to do the work which was usually done by two men. He was only 18 years of age, and was wholly uneducated. He had only been at work at the mill for about two weeks and had been operating the bull-wheel for a much less period of time. He was not warned about the dangers incident to his work.''

The appellee in the instant case was fifty years old, familiar with this kind of work; had used platforms like this many times, and, besides that, had the right to arrange the plank to suit his own convenience.

The next case relied on by appellee is *Jewel Coal & Mining Co.* v. *Whitner*, 170 Ark. 393, 279 S. W. 1031. The court said in that case: ''The plaintiff further testified that he was sitting in the middle of the front end of the front car where it was his duty to sit while driving, and that he had fixed his seat so that coal would not topple off and cause him to fall when he should look back. His testimony as to the rock protruding over the track, to a certain extent, was corroborated by the testimony of another witness. This evidence, if believed by the jury, was sufficient to warrant it in finding that the defendant was guilty of negligence.''

The court in the same case said further: ''It is true, as contended by counsel, where the danger is so obvious that knowledge of it and appreciation thereof should be imputed to the servant, the court should have declared as a matter of law that he is not entitled to recover against the master.''

The next case relied on by appellee is *Bryant Lumber Co.* v. *Stastney*, 87 Ark. 321, 112 S. W. 740. In that case the appellee testified that the foreman told him to come with him and load the car, and he understood that

he was to go with the foreman, and he and his co-worker did so and followed the foreman onto the pile of lumber which fell and received no warning of the insecure position of the pile to which he was carried on his route nor notice from the foreman of the impending danger from the approaching engine. This testimony was contradicted by the foreman, and the court said: ''This conflict as to the facts upon which the case hinges is irreconcilable and should go to the jury upon proper instructions for their determination. * * * No presumption of negligence arises from the mere happening of the accident which caused the injury in such actions as these between master and servant; but the master is required to exercise ordinary care in discovering defects and in repairing them and in discovering dangers and obviating them.''

The next case is *Oakleaf Mill Co.* v. *Smith*, 98 Ark. 34, 135 S. W. 333. In that case the court said: ''There is a sharp conflict in the testimony. Plaintiff and some of the witnesses testified that, though he was foreman, his duties were limited to those of superintending the work of the men on one of the floors of the mill; that he worked under the direction of the general manager, and that a millwright was employed whose duty it was to keep the machinery and working places in repair. There was abundant evidence tending to show that plaintiff was what the witnesses called a straw-boss with authority only to direct the working of men under him, and that he had nothing to do with keeping the machinery and mill plant in repair; that this was done by the millwright under the direction of the general manager.''

Appellee also calls attention to the case of *St. Louis Stave & Lumber Co.* v. *Sawyer*, 90 Ark. 473, 119 S. W. 830, to sustain his contention that among the master's non-assignable duties are to use ordinary care to furnish a reasonably safe place in which to work and reasonably safe appliances, and to maintain them so. This rule is well settled by the decisions of this court, but the deci-

442

sions in these cases relied on by the appellee are none of them applicable to the facts in this case.

It is well settled that the master owes the duty to the servant to exercise ordinary care to provide a safe place to work, and that this duty is non-assignable; but it is equally well settled that where the master furnished the material and the employees themselves construct the platform or place to work, the master is not liable for negligence of the employees in the construction of the platform or place to work. This court has many times held that the master is not liable where the employee himself prepares the place to work.

In the instant case the appellee was not working under the immediate direction of the foreman; he had many times used platforms similar to the one used at the time of his injury; and, according to his own testimony, he had a right, and of course it was his duty, to place the plank where it would be most convenient and where it would be safe. The evidence, we think, does not show any negligence on the part of the master, but it does show that whatever risk there was was patent and obvious, and that the injured servant had a right to place the plank where there would be no danger.

The judgment of the circuit court is therefore reversed, and the cause is dismissed.