St. Louis-San Francisco Railway Company *v.* Fine.

Opinion delivered December 7, 1931.

*E. T. Miller* and *Warner & Warner,* for appellant.

*Partain & Agee,* for appellee.

McHANEY, J. This is an action for damages for personal injuries received by appellee on September 8, 1930, while in the employ of appellant as a member of a bridge crew, by being struck by one of appellant's trains, on its main line south of St. Louis about 35 miles, at a bridge across Merrimac River in the State of Missouri, about 3 P. M. of that date. This same crew, including appellee, had been working on an overhead bridge at Old Orchard, Missouri, a few miles south of St. Louis, and, when they had finished that work, they proceeded to the Merrimac bridge on Saturday, September 6, where they unloaded their tools, machinery, etc., preparatory to the repair of that bridge. A part of the equipment was an air compressor machine, used in connection with, or to operate, the hammer to weld rivets in the steel plates on the bridge. It was a heavy piece of machinery, weighing about five tons, and was unloaded and set in place on the dump or fill, (which was from 100 to 200 yards long from the north end of the bridge) about 25 feet from the north end and on the east side of the track in the clear of passing trains. Appellee testified it was set about two feet east of the east end of the ties, but appellant's witness, who had measured the distance, testified it was six feet, two inches from the east rail. This compressor was about ten feet long, six feet wide and six feet high with an engine at either end and an air tank in the middle. While in operation, it makes a great deal of noise. The

bridge was constructed with a girder on each end about 100 feet in length, and had two spans in between these girders with steel overhead structure. The repairs to be made were on the overhead structure, and at the time of the accident the crew, together with the assistant foreman, were engaged in working on the overhead structure of the north span, about 125 feet from the air compressor. Appellant's fast passenger train, known as the Blue Bonnet, left St. Louis traveling south at 2:20 p. m. each day to the knowledge of the crew, including appellee, but appellee did not know what time it arrived at the bridge or its schedule. Appellee was working on the east side of the compressor attending to his duties in the usual way when the necessity arose to adjust a grease cup on the west side of the compressor (his duties being to oil, grease and otherwise attend the engines so as to keep them operating), so he walked around the north end of the compressor and then south between the compressor and the track, stooped over to adjust a grease cup, and was struck about the left buttock by some part of the engine of the passing train and was seriously injured.

He brought this action under the Federal Employers' Liability Act, charging that appellant was negligent in that the assistant foreman, Bezdek, who was in charge of the crew, the foreman being absent, directed him to operate the air compressor machinery, and that he, the assistant foreman, would watch out for trains and warn him of their approach, which he failed to do. The trial resulted in a verdict and judgment against appellant in the sum of $30,000. Wherefore this appeal.

For a reversal of the judgment, appellant first argues that the evidence is insufficient to support the verdict. We cannot agree with appellant in this contention, as we think the facts justify the submission of the question of negligence to the jury. It is conceded that the liability of appellant, if any, is governed by the Federal Employers' Liability Act (U. S. Comp. St., §§ 8659-8665), and, as we said in *St. L-S. F. Ry. Co.* v. *Smith*, 179 Ark. 1015: "Since this suit was brought and prosecuted under the

Federal Employers' Liability Act, which does not define negligence, the question as to the sufficiency of the evidence to establish negligence must be determined by that act and the applicable principles of the common-law as construed by the federal courts.'' See cases there cited. A brief statement of the facts, in addition to those already stated, are as follows: The train which struck appellee was running fifty miles an hour, and, at the time appellee walked from a place of safety on the east side of the compressor to a place of danger, the train was seen by the other employees and was only 150 or 200 feet away, north of the compressor, and was in plain view of all the crew, including appellee. There was nothing in the way to prevent him seeing it, and, in addition to this, there was a semaphore signal located about an eighth of a mile north of the bridge, also in plain view, which had a board or arm on it about three feet long and which automatically moved up and down to signal the approach of trains to the bridge. The arm stood straight up when there was no train in the block, but when one did get in the block the arm lowered to an angle of 45 degrees, and then went straight down when a train in the block got within two miles of the bridge. It was also equipped with a green and red light, the green indicating safety and the red danger. The air was conveyed from the compressor to the workmen on the bridge by means of a pipe to which was attached the equipment for operating the riveting hammer by air, and, when this was in operation, it also made a great deal of noise. It is conceded that all the machinery, both on the bridge and at the compressor, was in operation at the time of appellee's injury, and that the noise was such that the approach of the train could not be determined by the sense of hearing. Some of the employees on the superstructure of the bridge attempted to notify appellee of the danger by calling to him, but were unable to do so. Assistant foreman Bezdek, who had told appellee that he would look out for trains for him and advise him of their approach, which fact we assume to be true for the purpose of this decision,

as the jury has evidently so found on conflicting testimony, was on the bridge with the other workmen. Appellee did not know where Bezdek was, but did know about an hour beforehand that he was up on the bridge with the other members of the crew directing their work. Considering the evidence in the light most favorable to appellee, as we must do, under the decisions of this court in determining the sufficiency of the evidence to support the verdict, appellee did not know of the presence of the semaphore nor of the signals thereon nor the schedule of the trains, and, while there was nothing to prevent his seeing the approaching train, being no doubt engrossed with his work and his sense of hearing being of no avail on account of the immediate noise, he neglected to look, and he relied upon the positive promise of Bezdek to warn him not only of this train but of all trains. Appellant's witness testified that the company had a rule that employees in bridge crews must watch out for their own safety, but this was denied by appellee, or that, if there was such a rule, he knew of it.

We think these facts sufficient to take the case to the jury under the comparative negligence rule of the Federal Employers' Liability Act as contributory negligence, conceding appellee to be guilty of contributory negligence (and the court instructed the jury that he was as a matter of law) does not prevent a recovery, but only goes to reduce the damages awarded by the jury. Cases cited by counsel for appellant to sustain their contention on this point that the railway company ordinarily owes no duty of keeping a lookout, to give signals of approach or to reduce speed of trains in anticipation of employees along the track, we think have no application to the facts in this case. These cases for the most part apply to track walkers, flagmen, employees working in the yards, section foremen and the like, but we think the rule has no application to section crews or bridge crews where the crews are working under the immediate direction of the foreman and under his express promise to watch out for trains and warn them in time so they may leave their work for the shortest time possible in getting to a place

of safety. If all the members of such crews had to look out for their own safety by watching for trains, it would surely interfere with their work. The case of *C. R. I. & P. Ry. Co.* v. *Abel,* 182 Ark. 651, 32 S. W. (2d) 1059, relied on by appellant, we think, has no application to the facts in this case for the same reason. There the appellee himself said that their instructions were to be themselves on the lookout for trains and keep out of the way of them, and that he had done that until the time he was injured. Here, however, appellee was acting upon the direct order of his foreman and under a promise that the foreman would keep a lookout for trains. We think the case is governed by the rule announced by this and other courts that employees such as section men or bridge crews, working on the track or in dangerous proximity thereto, are entitled to warning of approaching trains, and that it is negligence to fail to do so. See *St. L., I. M. & S. R. Co.* v. *Rickman,* 65 Ark. 138, 45 S. W. 56; *Sw. Tel. & Tel. Co.* v. *Woughter,* 56 Ark. 192, 19 S. W. 575; *St. L. & N. A. R. Co.* v. *Mathis,* 76 Ark. 184, 91 S. W. 763, 113 Am. St. 85. Conceding that there is a rule requiring such employees to watch out for their own safety, still appellee had no knowledge of the rule, and an employee is not bound by a rule of the company not brought to his attention. *St. L., I. M. & S. R. Co.* v. *Puckett,* 88 Ark. 204, 114 S. W. 224. Therefore appellee was not bound by a rule of which he had no knowledge, and had the right to rely upon the express promise of Bezdek to protect him. Counsel for appellant say the language used by Bezdek in making the promise to appellee did not amount to a promise to warn or protect him, but, if it did not mean that, it amounted to nothing. Appellant says Bezdek told him to go ahead with his work, and he would watch out for trains. This means that he would do so for appellee's benefit.

It is next insisted that a number of the instructions are erroneous, some of those given for appellee and those refused requested by appellant. A discussion of these questions could not be made in a reasonable space by taking them up in detail, and we will not attempt to do so.

We will say, however, that we have carefully examined these instructions and do not find them open to the objections made, or, if so, specific objection should have been made thereto. For instance, in the instruction given at appellee's request on the measure of damages, no mention was made therein that the jury should reduce the damages in the proportion that his contributory negligence bore to the negligence of appellant. The court told the jury, however, in another instruction that they must do this, and, if appellant had thought that the instruction on the measure of damages should have contained the same advice, it should have made such suggestion to the trial court. A great many instructions were given at appellant's request, and some were refused. On the whole, we think the court fully and fairly instructed the jury on every phase of the case to which appellant was entitled.

It is finally insisted that the amount of the verdict is excessive, and we agree with appellant in this contention. It is true that appellee received a serious injury, that he was only twenty-two years of age, was a strong, healthy and able-bodied young man who was earning $150 per month. He was a common laborer, not being skilled in any particular occupation. At the time of the trial he had not been able to use his left leg. The injury occurred September 8, 1930. Suit was filed shortly thereafter, in October, and trial was had in January following. He was in the hospital about thirty days and was able to get around on crutches at the time of the trial. But no bones were broken, and such injuries as he received were to the muscles and nerves. Two examinations were made by one of the physicians, one in November and one a short time before the trial, which showed a distinct improvement in his condition between the examinations. Another physician testifying in his behalf stated that appellee is permanently crippled, and that in his judgment he may never be able to walk again without a stick or a crutch to assist him. We think the jury failed to properly reduce the damages in proportion to appellee's contributory negligence, for an allowance of $30,000 at 6 per cent. would yield him the same rate of pay per

month or per year he was making and still leave him an estate of $30,000 at his death. We think this amount is excessive and should be reduced by one-half the amount thereof. If, therefore, appellee will within 15 days enter a remittitur, the judgment will be affirmed for that amount. Otherwise it will be reversed and remanded for a new trial. It is so ordered.