Missouri Pacific Railroad Company, Thompson, Trustee, *v.* Davis.

4-7513                                              186 S. W. 2d 20

Opinion delivered January 29, 1945.

*Thos. B. Pryor, Thos. Harper* and *Harrell Harper,* for appellant.

*Partain, Agee & Partain,* for appellee.

McFaddin, J. Action was filed in the circuit court against the appellant railroad company and its trustee by J. W. Davis as next friend of George Davis. Later Della Davis, as guardian for George Davis, insane, was substituted as plaintiff. The action was brought under the Federal Employers' Liability Act (U. S. C. A. Title 45, § 51, *et seq.*) to recover damages for injuries alleged to have been sustained by George Davis on March 31, 1942, when he fell from a scaffold while working on a trestle on the railroad in interstate commerce. For convenience, we refer to the injured worker, George Davis, as the plaintiff. He testified (see subdivision 2 of § 5156, Pope's Digest); and he and defendant's witness, W. H. Huber (foreman of the crew), were the only witnesses as to the alleged negligence, or the manner in which the plaintiff received his injuries. At the close of the plaintiff's case, and again at the close of all of the evidence, the defendant moved for an instructed verdict, which was

refused. Since the jury returned a verdict for the plaintiff, we take the testimony of the witnesses in the light most favorable to the appellee. (*Mo. Pac. R. Co.* v. *Newton,* 205 Ark. 353, 168 S. W. 2d 812, and authorities there cited.)

The plaintiff was working in a bridge crew for the defendant. He had been so employed for about six years, and was an experienced worker. Bridge No. 81 was a wooden trestle about a mile from Hickman, Nebraska. The railroad was about thirty feet above the ground. The trestle was about 200 feet long, and extended from east to west. The trestle was constructed in this manner: (1) A group of six pilings was driven into the ground at right angles to the direction of the railroad tracks, and these pilings extended upward to within a few feet of the railroad tracks. (2) These six pilings are together called a "bent," and, beginning at the east end of the proposed trestle, the bents were fourteen feet apart along the entire distance of the trestle. (3) Each bent is topped with a large timber in a north-to-south direction, called a "cord" or "cap." (4) Extending from bent to bent east and west over the entire length of the trestle and resting on top of the caps, are placed the "stringers"; and upon the stringers are placed the cross ties; and on the cross ties are placed the rails and guard rails running east and west. (5) Pieces of metal called "strap iron" (4 inches wide, ½ inch thick, and 30 inches long) are bolted to the caps and stringers, on both the north side and the south side of the trestle, to prevent the stringers from swaying.

The work of the plaintiff was to bolt the strap iron to the stringers and caps. To do this, the plaintiff worked on a scaffold, which was a board 2 inches thick, 12 inches wide, and 16 feet long, and was on the south side of the trestle at the time here involved. The east end of the board rested on a cap, and a rope was tied to the west end of the board and attached to the stringer or guard rail. The rope was tied eighteen inches from the west end of the board, and the scaffold sloped to the west end. The scaffold was about three feet below the top of the

rail. In short, the scaffold on which the plaintiff was working consisted of a board with the east end on a cap and the west end suspended from the guard rail by a rope tied to the board about eighteen inches from its west end; and the west end of the board reached to within a few inches of the bent west of the one where the east end of the board rested.

The plaintiff had been furnished the rope and board, and had personally constructed the scaffold without any supervision. He testified that he was furnished a good heavy rope and a good board; and that he constructed the scaffold, and that neither his foreman nor anyone else told him how to construct it, as he already knew. He testified: "Q. The end with the rope was held only by the rope? A. Yes, sir. Q. The other end just set up there? A. Just under the tie. Q. You said you fixed it yourself? A. Yes, sir. Q. You had done it many times before? A. Yes, sir. Q. You knew what your job was and you did it? A. Yes, sir. Q. Just as you had done before? A. Yes, sir."

The foreman Huber testified: "Q. What kind of a scaffold was it? A. A 2″ x 12′, 16-foot scaffold hitched to the bowline. Q. That holds the scaffold there, then the rope on the other end? A. Yes, sir. Q. Who erected it? A. Mr. Davis. Q. Did you tell him how? A. No, sir, he was experienced, and knew how."

The plaintiff constructed the scaffold, and was on it, putting the strap iron on the caps and stringers, on March 30, 1942, and from 8:00 a. m. until almost noon of March 31, 1942, when he fell and received his injuries. He had completed his work at that particular bent, and was in the act of leaving the scaffold, and was near the west end thereof where the rope was, when he fell from the scaffold to the ground about 26 feet below. He testified that he fell because the scaffold turned. He said: "Q. Nothing happened to the rope there? A. No, sir. Q. You did nothing to cause that to turn? A. No, sir. . . . Q. You don't know what happened? A. I know I fell. I can't say what condition the scaffold or rope

was in. Q. You don't know what made you slip and fall? A. The scaffold turned. Q. You don't know what made that? A. No, sir, other than maybe those men using jacks up there. Q. How many men were in your gang? A. I don't know for sure, about six men, sometimes fourteen. Q. Nobody was working close to you when you fell? A. There was a fellow helping me set this cap jack. I don't know where he was. Q. You don't know how close the next man was? A. No, sir. Q. You don't know whether anybody saw it or not? A. No, sir, I didn't see them."

The plaintiff did not definitely say that anyone was using any jacks on the bridge at the time he received his injury, or how any use would have affected the scaffold, but speculated that "maybe those men using jacks up there." The foreman Huber testified (and it is not denied) that there were no jacks being used by anyone at that time. They had been used previously, as indicated by the plaintiff, but were not being used at that time. The witness Huber further testified: "Q. Did the scaffold fall? A. The scaffold slew around. Q. What do you mean? A. The free end came off the cap. Q. Did it come to the ground? A. No, sir, the free end was on the stringer. Q. The rope was still holding it? A. Yes, sir."

Pictures were introduced by consent of both parties, showing how a similar scaffold would look with the end of the board resting on the cap, and how the board would dangle from the rope when the east end was not resting on the cap. There was no motion or movement of the bridge of any kind. The plaintiff was the only person on the scaffold. The other men in the crew were from twelve to fifteen feet away from the plaintiff at the time he fell; and there is nothing in evidence to show that any fellow-servant did anything that caused Davis to fall from the scaffold. On cross-examination of Huber, the plaintiff's attorney, under the ruling of the trial court and over the objection of the appellant, was permitted to ask the witness Huber what, in his opinion, caused the plaintiff Davis to fall. This question was asked: "Q. Assuming it to be true that it (the scaffold) was properly con-

structed, placed on the bents right, and in that interval, assuming George did nothing to cause that scaffold to 'slew' around, what happened? A. I assume George must have fallen.'' And, after further efforts of plaintiff's attorney, the witness stated: ''A. Evidently something was done by George that caused it to 'slew' around.'' While this opinion evidence would not have been admissible if plaintiff had objected, still the plaintiff elicited it; and we mention it to show the indefinite nature of the evidence, because a study of the entire record fails to disclose any more definite reason, as to what caused the plaintiff to fall from the scaffold, than the evidence we have detailed.

The cause was tried to a jury, and from a verdict and judgment for the plaintiff, the appellant prosecutes this appeal. Several questions are presented, but we find it necessary to discuss only the issues here stated, which relate to the question of liability. The other questions could arise only if the defendant were liable. We reach the conclusion that the lower court should have instructed a verdict for the defendant.

I. *The Plaintiff Must Prove Negligence Chargeable to the Defendant or Its Employes.* In *St. L.-S. F. R. Co.* v. *Smith,* 179 Ark. 1015, 19 S. W. 2d 1102, this court, in a case arising under the Federal Employers' Liability Act, said:

''Since this suit was brought and prosecuted under the Federal Employers' Liability Act, which does not define negligence, the question as to the sufficiency of the evidence to establish negligence must be determined by that act and the applicable principles of the common law as construed by the federal courts. *Mo. Pac. R. Co.* v. *Skipper,* 175 Ark. 1083, 298 S. W. 849. As said by the Supreme Court of the United States in *Atlantic Coast Line Rr. Co.* v. *Davis,* 279 U. S. 34, 49 S. Ct. 210, 73 Law Ed. 601: 'It is unquestioned that the case is controlled by the Federal Employers' Liability Act, under which it was prosecuted. Hence if it appears from the record that, under the applicable principles of law as interpreted

by the federal courts, the evidence was not sufficient in kind or amount to warrant a finding that the negligence of the railroad company was the cause of the death, the judgment must be reversed.' Citing *Gulf M. & N. R. Co.* v. *Wells,* 275 U. S. 455, 72 L. Ed. 370, 48 S. Ct. 151, and cases cited.

"We find the rule governing the state courts well stated in the cases of *Chicago, Milwaukee & St. Paul Ry. Co.* v. *Coogan,* 271 U. S. 742, 46 S. Ct. 564, 70 L. Ed. 1041, as follows:

" 'By the Federal Employers' Liability Act Congress took possession of the field of employers' liability to employees in interstate transportation by rail, and all state laws upon that subject were superseded. Second Employers' Liability Cases (*Mondou* v. *New York, N. H. & H. R. Co.*), 223 U. S. 1, 32 S. Ct. 169, 56 L. Ed. 327, 348, 38 L. R. A., N. S., 44, 1 N. C. C. A. 875; *Seaboard Air Line R. Co.* v. *Horton,* 233 U. S. 492, 58 L. Ed. 1062, 1068, L. R. A. 1915C 1, 34 Sup. Ct. Rep. 635, Ann. Cas. 1915B 475, 8 N. C. C. A. 834. The rights and obligations of the petitioner depend upon that act and applicable principles of common law as interpreted by the federal courts. The employer is liable for injury or death resulting in whole or in part from the negligence specified in the act; and proof of such negligence is essential to recovery. The kind or amount of evidence required to establish it is not subject to the control of the several states. This court will examine the record, and, if it is found that, as a matter of law, the evidence is not sufficient to sustain a finding that the carrier's negligence was a cause of the death, judgment against the carrier will be reversed. *St. Louis, I. M. & S. Ry. Co.* v. *McWhirter,* 229 U. S. 265, 57 L. Ed. 1179, 1186, 33 Sup. Ct. Rep. 858; *New Orleans & N. E. R. Co.* v. *Harris,* 247 U. S. 367, 62 L. Ed. 1167, 38 Sup. Ct. 535; *New Orleans & N. E. R. Co.* v. *Scarlet,* 249 U. S. 528, 63 L. Ed. 752, 39 Sup. Ct. 369.'

"The act referred to provides that carriers by railroad shall be liable in damages to their employees for 'injury or death resulting in whole or in part from the

negligence of any of the officers, agents or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.' "

Since our decision in the case of *St. L. S. F. R. Co.* v. *Smith, supra,* there have been numerous cases decided by the Supreme Court of the United States construing this Act. Two of the most recent ones in point are *Brady* v. *Southern Railway Co.,* 320 U. S. 476, 64 S. Ct. 238, 88 L. Ed. 229; and *Tennant* v. *Peoria & Pekin Union Railroad Co.,* 321 U. S. 29, 64 S. Ct. 409; 88 L. Ed. 424. Both of these cases reiterate that the plaintiff must prove negligence chargeable to the defendant or its employees before there can be a recovery. In *Tennant* v. *Peoria & Pekin Union Railroad Co., supra,* Mr. Justice MURPHY, speaking for the court, said:

"In order to recover under the Federal Employers' Liability Act, it was incumbent upon petitioner to prove that respondent was negligent and that such negligence was the proximate cause in whole or in part of the fatal accident. *Tiller* v. *Atlantic Coast Line R. Co.,* 318 U. S. 54, 87 L. Ed. 610, 63 S. Ct. 444, 143 A. L. R. 967. Petitioner was required to present probative facts from which the negligence and the causal relation could reasonably be inferred. 'The essential requirement is that mere speculation be not allowed to do duty for probative facts, after making due allowance for all reasonably possible inferences favoring the party whose case is attacked.' *Galloway* v. *United States,* 319 U. S. 372, 87 L. Ed. 1458, 63 S. Ct. 1077; *Atchison, T. & S. F. R. Co.* v. *Toops,* 281 U. S. 351, 74 L. Ed. 896, 50 S. Ct. 281. If that requirement is met, as we believe it was in this case, the issues may properly be presented to the jury."

The appellee cites us to *Tillar* v. *Atlantic Coast Line R. Co.,* 318 U. S. 54, 87 L. Ed. 610, 54 S. Ct. 444, 143 A. L. R. 697, and *Bailey* v. *Central Vermont Ry. Co.,* 319 U. S. 350, 63 S. Ct. 1062, 87 L. Ed. 1444; and argues that the rationale of these cases is that when the injury is shown,

and the manner in which it occurred is detailed, then the jury may decide the negligence, and the reviewing authority must not disturb the verdict. We hold that these cases do not go to any such length. The positive wording of the statute (U. S. C. A. Title 45, § 51) and the plain language in the cases of *Brady* v. *S. Ry. Co., supra,* and *Tennant* v. *P. & P. U. Ry. Co., supra,* all show that negligence must be proved by the plaintiff before there may be a recovery.

II. *There Is No Proof of Negligence in This Case.* The complaint contains four allegations concerning negligence. The fourth allegation will be discussed in heading III, *infra.* The other three allegations related to the construction and maintenance of the scaffold, and the plaintiff's place of work. We discuss these three:

(a) It cannot be urged that there was any negligence in furnishing faulty materials to go into the scaffold, because the plaintiff positively testified that the rope and the board were both of good material. Furthermore, neither the rope nor the board broke.

(b) It cannot be successfully urged that the defendant was guilty of negligence in the construction of the scaffold, because the plaintiff himself constructed the scaffold; and he said he was experienced and no one directed him in the construction because he already knew. He constructed it himself, and he is the only person who ever used it or was on it. In *Fraser* v. *Norman,* 184 Ark. 434, 42 S. W. 2d 569, Mr. Justice MEHAFFY, speaking for this court, said:

"It does not appear from the evidence that the master had anything to do with the scaffold except to furnish the material out of which it was made, and it is generally held that the obligation of an employer to furnish his employees with safe appliances and a safe place to work does not impose upon him the duty of supplying instrumentalities in a completed form.

"Where the employees construct the scaffold, the employer's duty is discharged by furnishing suitable

materials, and the employer is not liable for injury due to a defect in the construction or adjustment of the scaffold.

"In this case the undisputed evidence shows that the appellee himself had a right, and it was his duty, to adjust it to suit his own convenience.

"The general rule may be stated as follows: Where the employer does not undertake to furnish the scaffold, but instead merely supplies material for its construction, and where the employer has no supervision over the erection of the structure and gives no directions in regard to it other than to direct that it be constructed, he is not liable for an injury due to negligence in its construction. 18 R. C. L. 596-597."

And to the same effect see 35 Am. Juris. 624; and Annotations in: 3 L. R. A., N. S., 500; 18 Ann. Cas. 611; and Ann. Cas. 1913B, 1123.

(c) It cannot be said that any fellow-servant did anything that caused the injury, because there is no positive testimony to that effect; and there is positive testimony that no fellow-servant was within twelve feet of the plaintiff when he fell, and that there was no movement of the trestle or anyone on it that caused the plaintiff to fall.

What, then, caused the plaintiff to fall, and where is the negligence? His explanation is that the scaffold turned. What caused the scaffold to turn? The plaintiff frankly stated that he did not know. The witness Huber —after repeated cross-examination by plaintiff's attorney—finally was allowed by the court to venture the statement as to why the board turned: "Evidently something was done by George that caused it to 'slew' around." When we remember that "George" is the plaintiff Davis, we are left with the answer that the plaintiff brought his injury on himself. Certainly, no negligence of the defendant or its other employees was shown.

We have repeatedly said: "Juries are not permitted to base verdicts on mere conjecture or speculation.

There must be substantial testimony of essential facts, or facts which would justify a reasonable inference of such essential facts, on which to base a verdict, before it will be permitted to stand." *St. L.-S. F. R. Co.* v. *Smith,* 179 Ark. 1015, 19 S. W. 2d 1102, and *Simms Oil Co.* v. *Durham,* 180 Ark. 366, 21 S. W. 2d 861. As stated in *Tennant* v. *Peoria & Pekin Union Ry. Co., supra,* "The essential requirement is that mere speculation be not allowed to do duty for probative facts, after making due allowance for all reasonably possible inferences favoring the party whose case is attacked." The essential requirement of probative facts showing negligence is absent in the case at bar.

The appellee cites us to the case of *Bimberg* v. *N. Pac. Ry. Co.,* decided by the Supreme Court of Minnesota 14 N. W. 2d 410, (writ of certiorari denied by the United States Supreme Court October 16, 1944, 65 S. Ct. 87). But that case has no resemblance to the case at bar, except in the one particular that in each case there was a bridge. In the Minnesota case the worker was a carpenter and was thrown from the top of the bridge because the bar he was using slipped and he lost his footing. Negligence was predicated on the absence of a guard rail on the bridge, and the failure to furnish a safety belt for the worker. There was proof offered that either a guard rail or a safety belt was essential in safe operations in such cases; and the absence of both was held by the court to be sufficient evidence of negligence to take the case to the jury. In the case at bar the allegations of negligence related to matters about the scaffolding. A guard rail on top of the trestle would not have affected the situation of the plaintiff, because he was three feet below the rails on the trestle. There was no allegation about the absence of a safety belt. There was no testimony of any kind even hinting that any worker such as the plaintiff ever used a safety belt. The Bimberg case does not support the appellee. Likewise, the case of *Bailey* v. *Cent. Vt. Ry. Co.,* 319 U. S. 350, 63 S. Ct. 1062, 87 L. Ed. 1444, relied on by the appellee, is not in point. The absence of the guard rail on the top of the bridge, and the inexperience of Bailey distinguish that case from the one at bar, where

the worker was experienced, and a guard rail would not have affected the situation, and the injured worker himself built the scaffold. We conclude that there is no evidence of negligence in this case.

III. *No Causal Connection Between the Safety Rule and the Plaintiff's Injuries.* As previously stated, there was in this case one other allegation of negligence which we have reserved for separate consideration, and which we now discuss. It related to alleged violation of one of the safety rules of the railroad company. The trestle on which the plaintiff was working at the time he received his injuries was one that replaced an older trestle; and the plaintiff testified that when he fell, his side struck against a stub projecting several feet above the ground, and that this stub was the remains of the piling of the previous trestle. The plaintiff introduced the safety rule of the defendant, which stated:

"Employees must not be permitted to work on scaffolding over pile stubs, material, or rubbish."

The plaintiff argues that the foreman Huber was negligent in allowing the plaintiff to work over the old stubs of piling, and that the violation of this safety rule is the negligence that caused the plaintiff's injuries. There is no causal connection between any violation of this safety rule and the plaintiff's injury. The stubs of old piling down on the ground twenty-six feet below the plaintiff could not have caused him to fall. Conditions existing on the ground to which he fell could have no causal connection with the fall.

As we have previously stated, before the plaintiff can recover, he must show that some negligence of the defendant or its other employees caused him to fall. In *Meeks* v. *G., N. & A. R. Co.,* 168 Ark. 966, 272 S. W. 360, Mr. Justice HART, speaking for this Court, said:

"The rule is well established in this State that, in an action for personal injuries, although the defendant may be shown to have been negligent in some manner, yet, unless the negligence so shown is the proximate cause of the injury complained of, no recovery can be had

on account of such injury." See, also, cases collected in West's Arkansas Digest, "Negligence," Key No. 56.

Even where violation of a statute or ordinance is claimed as the act of negligence, the same rule of causal connection applies. In 38 Am. Juris. 837, the rule is stated:

"It is not material whether the negligence complained of in an action was the violation of a duty imposed by the common law or the violation of one imposed by a statute or ordinance, so far as concerns the requirement that negligence must have been the proximate cause of the plaintiff's injury to warrant a recovery. Regardless of whether the violation of a statute or ordinance is regarded as negligence, negligence *per se,* or evidence of negligence, the plaintiff, to be entitled to recover, must show a causal connection between the injury received and the violation of the statutory prohibition or mandate. In other words, he must show that the violation of the statute was the proximate cause of the injury. If the violation of the statute or ordinance by the defendant was not the direct and proximate cause of the accident, he is not liable for the injury of which complaint is made."

The United States Supreme Court has applied this same rule in cases arising under the Federal Employers' Liability Act. In *Brady* v. *Southern Railway Co., supra,* Mr. Justice REED, speaking for the United States Supreme Court, said:

"But it is generally held, that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances.

". . .

"Liability arises from negligence not from injury under this Act. And that negligence must be the cause of the injury. *Tiller* v. *Atlantic Coast Line R. Co.,* 318 U. S. 54, 87 L. Ed. 610, 63 S. Ct. 444, 143 A. L. R. 967.''

For the reasons stated in this opinion, the judgment of the circuit court is reversed, and the cause is dismissed.