CHAMBERS *v.* BIGELOW-LIPTAK.

5-2872                                            363 S. W. 2d 908

Opinion delivered January 21, 1963.

*Bernard Whetstone,* for appellant.

*Ben D. Lindsey,* for appellee.

FRANK HOLT, Associate Justice. This is an appeal from the decision of the circuit court which upheld the opinion of the Referee and the full Workmen's Compensation Commission, both of which denied the appellant's claim for permanent partial disability and death benefits for the widow of the deceased employee, J. C. Chambers.

The first claim arising out of the injury in question was before this court in *Chambers v. Bigelow-Liptak Corp.,* 233 Ark. 330, 344 S. W. 2d 588, on March 27, 1961. In that case J. C. Chambers, now deceased, sought total temporary disability and permanent partial disability

benefits based upon his claim that he had suffered a severe case of pneumonia or pneumoconiosis as a result of his working conditions.[1] In that case the Referee, the full Commission and the Circuit Court denied these claims and upon appeal this court affirmed the denial of permanent partial disability. We reversed the denial of total temporary disability and in doing so determined this period of disability should begin with the date of Chambers' illness on December 20, 1959 and end on March 30, 1960.

Chambers died on August 12, 1961, from lobar pneumonia[2] and therefrom comes the present claim by his widow for permanent partial disability and death benefits.

In the present case additional evidence was taken. The appellant, Mrs. Chambers, her son and Chambers' stepson, Ray Folks and his wife, testified that Chambers was strong and healthy before his injury or lung infection with pneumonia in December of 1959 and thereafter his health gradually deteriorated until his death in August of 1961. However, during the fifteen months preceding his death he worked most of the time, in residential construction, and never received medical attention or treatment until he became seriously ill on August 10, 1961, resulting in hospitalization the following night. He died the next day from pneumonia.

Dr. Donald J. Sekinger, who attended Chambers at his death, and Dr. Grady Hill, Jr., who treated Chambers at the time of his injury or illness in December, 1959, and for three months thereafter, testified that in their opinion, from their knowledge of Chambers' case, there was a causal connection between Chambers' death on August 12, 1961, and his original illness or injury in December, 1959. Dr. Hill reaffirmed his original opinion given in the first claim that Chambers had suffered a permanent partial disability and, further, that such existed from the time of his first illness until his death.

---

[1] For a detailed account of these facts see opinion in first case, *Chambers* v. *Bigelow-Liptak*, supra.

[2] Dr. Buchman defined lobar pneumonia as a disease of bacterial origin, a massive type of infection.

To the contrary, Dr. Joseph A. Buchman, who examined Chambers and x-rays of him on April 5, 1960,[3] reaffirmed his opinion given in the first or original claim to the effect that Chambers suffered no permanent partial disability. After studying the depositions of Mrs. Chambers, Ray Folks, Mrs. Ray Folks, Dr. Sekinger and Dr. Hill, Dr. Buchman further testified that in his opinion there was no causal connection between Chambers' death on August 12, 1961, and his injury in December of 1959.

Appellant relies on two points for reversal:

(1) That the present claim for permanent partial disability is based on a modification of award pursuant to Ark. Stats. 81-1326, and therefore, the present claim for permanent partial disability is not barred as *res judicata;*

(2) that the denial of death benefits because of no causal connection with the original illness is not supported by substantial evidence.

We discuss these points in reverse order.

Dr. Buchman testified that he personally made a physical examination of Chambers and studied x-rays of his chest in April of 1960 in arriving at his original and present opinion that Chambers was well in April, 1960.

Dr. Buchman further testified:

"Q. Based upon the history that you gained through the patient and the depositions which you have read, taken of Dr. Sekinger, Dr. Hill, the widow, Mr. and Mrs. Ray Folks, do you have an opinion as to whether or not his pneumonia which caused his death in New Orleans on August the 12th, 1961, had any causal connection with his illness of December the 23rd, 1959, and with his employment shortly prior to that?

A. I don't think there is any direct relationship between the two at all.

---

[3] Dr. Hill last saw and treated Chambers on March 7, 1960, for acute bronchitis. Dr. Buchman was the last physician to see Chambers until his fatal illness.

Q. Why do you say that, Doctor?

A. Well, it's a bacterial infection and I do not see how he could harbor that bacteria so long and not have a lot of symptoms from it and have in April of 1960 a completely normal chest x-ray, that is, a normal chest x-ray for a man of this age.''

Dr. Buchman stated further that:

''Q. Now doctor, from the time you examined him and until the date of his death, it was testified to in the depositions which we have mentioned before that Mr. Chambers would spit up blood fairly often and was in a condition that he lost weight consistently. Now, based upon your examination at the time that you saw him and the history testified to, what significance do you place in that as to his accident.

A. I don't think that had any relation to the accident.''

Dr. Buchman further testified:

''Q. In other words, Doctor, any pneumonia that he contacted after the date of your examination was a new infection and had nothing in your opinion to do with his exposure in the nut cracker in December of 1959?

A. I don't see how it could bear any direct relation at all.''

We view the evidence in this case to constitute substantial evidence in the record to support the Commission's finding there was no causal connection between the original and terminal illness in the present case. In the original case, *Chambers* v. *Bigelow-Liptak Corp.*, supra, we construed as substantial Dr. Buchman's opinion that Chambers had no permanent partial disability and had completely recovered.

We have consistently adhered to the established rule that we will not disturb the findings of fact by the Commission if supported by any substantial evidence. *White* v. *First Electric Cooperative Corp.*, 230 Ark. 925, 327 S. W. 2d 720; *Fagan Electric Co.* v. *Green*, 228 Ark. 477,

308 S. W. 2d 810; *West* v. *Smith*, 225 Ark. 365, 282 S. W. 2d 597.

In the *Carty* v. *Ward Furniture Mfg. Co.*, 229 Ark. 725, 318 S. W. 2d 148, the court said:

"Since the enactment of our Workmen's Compensation Law, we have consistently held that we do not try compensation cases here *de novo,* we are, therefore, not concerned with where the weight of the evidence may lie. When we find any substantial evidence to support the findings of the commission, we must affirm."

Inasmuch as the Commission's finding that no causal connection existed between the death of the employee, Chambers, and his original illness or injury is supported by substantial evidence this, in effect, is also a finding that no permanent disability was occasioned by the first illness. Thus it becomes unnecessary to discuss point number one of appellant's argument which deals with the question of modification of award and *res judicata.*

The judgment of the circuit court is affirmed.

JOHNSON, J., dissents.

JIM JOHNSON, Associate Justice, (Dissenting). I do not agree with the majority view.

The two doctors who had actually treated J. C. Chambers testified, without equivocation, that there was a causal connection between the injury Chambers received in 1959 (See *Chambers* v. *Bigelow-Liptak Corporation,* 233 Ark. 330, 244 S. W. 2d 588) and his terminal illness and death. Even the insurance company doctor conceded on cross-examination that there might have been a slight causal connection between the original injury and the death. An autopsy had been performed upon the deceased which disclosed beyond doubt the existence on an old permanent injury in Chambers' right lung, and after introduction of the autopsy report, this same doctor admitted that he discovered permanent disability to Chambers' lung in the one and only examination he ever did of him (which was prior to the first appeal to this court) and that he (the insurance company

doctor) knew all along that Chambers had this permanent disability, but that since he did not know to what to ascribe the permanent disability, he simply wrote on his report that there was no permanent disability![1]

Additional testimony was given by lay witnesses who were intimately associated with Chambers up to the time of his death. Their testimony is undisputed that from the time of his first injury until his death the deceased continued to have recurrent cough and fever, spitting up blood, loss of weight and other symptoms of continuing disability to his lung.

The overwhelming evidence supports an award of compensation. In my view, the slight evidence of the insurance company's doctor, upon which the Workmen's Compensation Commission chose to hang its opinion, was far from substantial. See *Missouri-Pacific Rd. Co.* v. *Davis*, 208 Ark. 86, 186 S. W. 2d 20. To say the least, the rule restated in *Pekin Wood Products Company* v. *Graham*, 207 Ark. 564, 181 S. W. 2d 811 should control here.

For the reasons stated above, I respectfully dissent.

---

[1] On the first appeal this doctor had reported that the deceased suffered no permanent disability to his lungs as a result of his injury. It was upon this report that the Workmen's Compensation Commission denied the claimant payment for permanent partial disability, and on appeal this same report was declared to be the substantial evidence upon which this court affirmed the Commission's findings as to permanent partial disability.